John and Nanci LAMAR, Appellants,

v.

Eric PONCON and Morgan's Rock Hacienda and Ecolodge, Appellees.

No. 01–08–01036–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Oct. 1, 2009.

Kurt B. Arnold, Arnold & Itkin, LLP, Houston, TX, for Appellant.

David Edwards, Michael Phillips, Neal David Kieval, Phillips & Akers, P.C., Houston, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices BLAND and MASSENGALE.

## OPINION

JANE BLAND, Justice.

This is an appeal from trial court orders refusing to allow jurisdictional discovery and granting the defendants' special appearances. John and Nanci Lamar sued Eric Poncon and Morgan's Rock Hacienda and Ecolodge (Morgan's Rock), a Nicaraguan corporation, for its negligence in causing personal injuries arising out of a car accident that allegedly occurred when the Morgan's Rock driver fell asleep at the wheel while driving the Lamars from the airport to the Morgan's Rock resort in Nicaragua. After Morgan's Rock and Poncon filed a special appearance, the Lamars moved for jurisdictional discovery and twice amended their motions. Each time, the trial court denied jurisdictional discovery and in December 2008, granted the special appearances. The Lamars appeal, contending that the trial court erred in granting the special appearance and in denying their requests for jurisdictional discovery.[1] We conclude that the Lamars have not established that the trial court has personal jurisdiction, but the trial court erred in refusing to allow limited jurisdictional discovery, which was reasonably calculated to lead to admissible evidence on the matter. We therefore reverse and remand the cause for further proceedings.

## Background

In August 2005, the Lamars traveled to Morgan's Rock resort in Nicaragua on vacation. Nanci Lamar purchased and arranged the trip through Austin travel agency Anderson Mill Travel Services (Anderson Mill). The trip the Lamars purchased included ground transportation from the airport to the resort. While driving the Lamars to the resort, the driver of the vehicle fell asleep at the wheel, lost control, and crashed into a tree. The Lamars suffered serious injuries: John sustained back and neck injuries, a broken rib, and multiple lacerations, and Nanci suffered back injuries, and a severe knee injury and a laceration near her eye and nose, both of which required surgery to

---

1. In January 2009, the Lamars filed a motion for new trial, hoping that the new trial judge who had just taken office would reconsider the previous trial judge's grant of the special appearance. In February 2009, the trial court stayed the motion for new trial at Morgan's Rock's request, and allowed the Lamars' interlocutory appeal to proceed.

repair. Medical personnel treated the Lamars in Nicaragua and then flew them back to Houston to receive care at The Methodist Hospital. The Lamars sought payment of their medical bills from Morgan's Rock, and Morgan's Rock refused.

The Lamars then filed suit against Anderson Mill, Morgan's Rock, and Poncon in Texas state court.[2] It was over a year before the Lamars were able to serve process on Poncon and Morgan's Rock.[3] Poncon and Morgan's Rock specially appeared, supported by the affidavit of Poncon, a French citizen and the president of the Nicaraguan corporation that owns Morgan's Rock. Poncon and his family members are the sole shareholders of that corporation. Poncon averred that neither Morgan's Rock nor Poncon maintain an address in the United States, have employees in the United States, advertises in the United States, owns or leases property in the United States, or has a bank account here. He further averred that Morgan's Rock does not conduct any business or operations in Texas through a business subsidiary, affiliate company, joint venture, or agent or independent contractor, and Morgan's Rock has never entered into any contracts in Texas. According to Poncon, Morgan's Rock does not produce any advertising or printed materials for distribution in the United States or Texas and does not maintain a toll-free telephone number or United States telephone number to receive United States phone calls. Poncon acknowledged, however, that United States guests come to the hotel, frequently booking their trips through United States travel agents. According to Poncon, Morgan's Rock pays a fee to any travel agent who books a hotel guest, but it does not have an ownership interest in any United States travel agency.

In July 2007, the Lamars moved for jurisdictional discovery, requesting leave to depose Eric Poncon and a corporate representative for Morgan's Rock, and to serve interrogatories, requests for production, and requests for admission, in an effort to establish that Morgan's Rock is subject to jurisdiction in Texas. The Lamars attached the affidavit of their attorney Kurt Arnold, averring that the Lamars used all avenues available for discovering Morgan's Rock's contacts with Texas other than direct discovery from Morgan's Rock, and that discovery was the only method possible for determining Poncon and Morgan's Rock's specific and general contacts with Texas. At the same time, the Lamars served written discovery requests and notices of depositions on Poncon and the corporate representative of Morgan's Rock. The Lamars stipulated that their counsel would travel to Nicaragua for any jurisdictional depositions the trial court allowed.

Morgan's Rock moved to quash the depositions and refused to respond to written discovery, complaining that Arnold's affidavit was insufficient under Texas Rule of Civil Procedure 120a(3) because it did not establish the steps that the Lamars had taken to justify their need for written discovery. *See* Tex.R. Civ. P. 120a(3). After a hearing, the trial court quashed the depositions, and refused to allow the written discovery.

In November 2007, the Lamars amended their motion for jurisdictional discovery, attaching additional affidavits. Caj Boatwright, another of the Lamars' attor-

---

2. Anderson Mill settled the claim against it.

3. Nicaragua is not a signatory to the Hague Convention, making service on the Morgan's Rock defendants difficult. The Lamars served Eric Poncon when he attended a conference in New York.

neys, described the resources used by his firm in attempting to determine Morgan's Rock's contacts with Texas, specifically internet databases such as Westlaw, Accuring, Yahoo! People Finder, and PACER. Boatwright averred that these databases cannot show whether Poncon or another Morgan's Rock representative has traveled to Texas, and do not contain contracts that might have been signed, negotiated or entered into in Texas. Furthermore, these databases do not allow the Lamars to cross-examine Poncon on the statements in his affidavit. Nanci Lamar averred that she was unaware of the extent of Morgan's Rock's contacts in Texas, but that she understood that Morgan's Rock worked with Anderson Mill to book trips for Texans to the resort. Finally, Arnold executed another affidavit similar to Boatwright's in which he described the search terms he used when searching additional internet databases in an attempt to uncover Morgan's Rock's contacts in Texas. The trial court again heard and denied the Lamars' motions.

In February 2008, the Lamars again amended their motion for jurisdictional discovery. This time, the Lamars included two additional affidavits along with the previously included affidavits of Arnold, Boatwright, and Lamar. Boatwright executed one of these additional affidavits, again describing his efforts to search internet databases for Morgan's Rock and Poncon's Texas contacts. Boatwright also averred that the Lamars sought the dates that Poncon or another Morgan's Rock representative traveled to Texas on business, copies of contracts or business agreements executed in Texas, letters, phone calls, emails, and other communications directed to Texas for business purposes, all of which the Lamars expected jurisdictional discovery to show. Further, Boatwright reiterated the Lamars' desire to cross-examine Poncon on his affidavit

supporting his special appearance. The Lamars also included a new affidavit from Kevin Pipkins, a private investigator they hired to investigate Morgan's Rock and Poncon's contacts with Texas. Pipkins averred that it is difficult to determine a foreign corporation's business contacts with Texas because no method exists for searching contracts, transactions, investments, and communications made with Texas, and most foreign corporations have no property in Texas and are not registered to do business in Texas, even if they have extensive contacts. He averred that he had used all known internet, financial, and property resources to try to establish Morgan's Rock and Poncon's contacts to Texas. The Lamars again attached written discovery requests to their motion. The trial court held another hearing, where it noted that nothing in the Lamars' attached affidavits contradicted the statements in Poncon's affidavit attached to his special appearance. On this basis, the trial court again quashed both the written requests for discovery and depositions.

Ultimately, the Lamars responded to Morgan's Rock and Poncon's special appearance, alleging that Morgan's Rock is subject to general jurisdiction because it has continuous and systematic contacts with Texas based on its relationship with Anderson Mill and that it is subject to specific jurisdiction because the Lamars' cause of action arose out of Morgan's Rock's relationship with Anderson Mill. In support of their response, the Lamars included the deposition of Leigh Ann Cloutier, the president of Anderson Mill, which describes Anderson Mill's contacts with Morgan's Rock, the affidavit of Tom Stanley, an expert in international tour operations and travel industry standards, regarding his analysis of those same contacts, and the affidavit of Nanci Lamar. According to Stanley's affidavit, the docu-

ments produced to him by Anderson Mill indicated that in Morgan's Rock's first year of operation, when the Lamars visited, Anderson Mill provided approximately 100 clients to Morgan's Rock, which Stanley estimated accounted for ten to nineteen percent of Morgan's Rock's total bookings made by travel agents worldwide and Morgan's Rock's reservations staff. Nanci Lamar stated in her affidavit that she understood from her conversations with Anderson Mill that the travel agent and Morgan's Rock worked together to book trips for Texans to the resort and to provide all requisite services, including transportation.

Cloutier testified that Anderson Mill booked a significant number of travelers on trips to Morgan's Rock in the first year. Cloutier estimated that she sent one hundred clients to Morgan's Rock. Each trip cost an estimated two thousand dollars, thus resulting in an estimated two hundred thousand dollars overall, of which Morgan's Rock receives a significant portion. Cloutier agreed that Anderson Mill regularly communicates with employees of Morgan's Rock in the booking process. Anderson Mill received media CDs and brochures from Morgan's Rock at a trade show, which Anderson Mill uses in marketing the resort. Additionally, Morgan's Rock provided Cloutier with three free stays at the resort in order for her to inspect the property so that she can recommend it to her Texas clients. Cloutier did not know whether any other travel agents in Texas also booked vacations with Morgan's Rock.

The trial court sustained Morgan's Rock and Poncon's special appearance in December 2008. The Lamars appeal, alleging that (1) the trial court should have granted jurisdictional discovery, in particular to test the statements Morgan's Rock proffered via Poncon's affidavit, and (2) the

Lamars nevertheless established that Morgan's Rock is subject to personal jurisdiction in Texas, making the trial court's granting of the special appearance improper.

## Discussion

Special appearances are governed by Rule 120a, which provides that "a special appearance may be made by any party ... for the purpose of objecting to the jurisdiction of the court over the person or property of the defendant on the ground that such party or property is not amenable to process by the courts of this State." Tex.R. Civ. P. 120a.

On appeal, we review *de novo* the trial court's determination to grant or deny a special appearance. *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex.2002). The plaintiff bears the initial burden of pleading sufficient allegations to bring a nonresident defendant within the provisions of the Texas long-arm statute. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 793 (Tex.2002). A nonresident defendant challenging the court's exercise of personal jurisdiction carries the burden of negating all grounds for personal jurisdiction alleged by the plaintiff. *Id.*; *Glattly v. CMS Viron Corp.*, 177 S.W.3d 438, 446 (Tex.App.-Houston [1st Dist.] 2005, no pet.). We review all evidence in the record to determine if the nonresident defendant met this burden. *N803RA, Inc. v. Hammer*, 11 S.W.3d 363, 366 (Tex.App.-Houston [1st Dist.] 2000, no pet.) (citing *Gen. Elec. Co. v. Brown & Ross Int'l Distribs., Inc.*, 804 S.W.2d 527, 529–30 (Tex.App.-Houston [1st Dist.] 1990, writ denied)).

Once the parties join the jurisdictional issue, the Texas long-arm statute must authorize the exercise of jurisdiction, and the exercise of jurisdiction must be consistent with the guarantees of due pro-

cess. *Coleman,* 83 S.W.3d at 806; *Tri-State Bldg. Specialties, Inc. v. NCI Bldg. Sys., L.P.,* 184 S.W.3d 242, 248 (Tex.App.-Houston [1st Dist.] 2005, no pet.). The Texas long-arm statute provides that a nonresident does business in Texas if it contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in Texas. TEX. CIV. PRAC. & REM.CODE ANN. § 17.042(1) (Vernon 2008).

■ Federal due process requires two things. First, the nonresident defendant must have purposefully established such minimum contacts with the forum state that the defendant could reasonably anticipate being sued in that state. *Glattly,* 177 S.W.3d at 446 (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475–76, 105 S.Ct. 2174, 2183–84, 85 L.Ed.2d 528 (1985)). The relevant inquiry is whether the nonresident defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Moki Mac River Expeditions v. Drugg,* 221 S.W.3d 569, 575 (Tex.2007) (citing *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958)). If the nonresident defendant has purposefully established minimum contacts with the forum, the exercise of personal jurisdiction must also comport with traditional notions of fair play and substantial justice. *Glattly,* 177 S.W.3d at 447 (citing *Burger King,* 471 U.S. at 476, 105 S.Ct. at 2184). Only in rare cases, however, will a Texas court's exercise of personal jurisdiction not comport with fair play and substantial justice if the nonresident defendant has purposefully established minimum contacts with Texas. *Guardian Royal Exch. Assur., Ltd. v. English China Clays, P.L.C.,* 815 S.W.2d 223, 231 (Tex.1991).

■ There are three parts to a purposeful availment inquiry. *Michiana*

*Easy Livin' Country, Inc. v. Holten,* 168 S.W.3d 777, 785 (Tex.2005). First, only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person. *Id.* Second, the contacts relied upon must be purposeful rather than random, fortuitous, or attenuated. *Id.* Thus, a seller who reaches out and creates continuing relationships and obligations with citizens of another state is subject to the jurisdiction of that state based on his or her activities. *Id.* Finally, the defendant must seek a benefit, advantage, or profit by availing itself to the jurisdiction. *Id.* Conversely, it is possible for a defendant to purposefully avoid a particular forum by structuring its transactions so as to neither profit from the forum's laws nor subject itself to its jurisdiction. *See Burger King,* 471 U.S. at 472, 105 S.Ct. at 2184 (quoting *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)).

■ Two types of personal jurisdiction may arise from a nonresident defendant's contacts with the forum state. *BMC Software,* 83 S.W.3d at 795–96. If the defendant made continuous and systematic contacts with the forum, general jurisdiction is established regardless of whether the defendant's alleged liability arises from those contacts. Id. at 796. Specific jurisdiction, on the other hand, requires analysis of the relationship among the defendant, the forum, and the litigation. *Moki Mac,* 221 S.W.3d at 575–76 (citing *Guardian Royal,* 815 S.W.2d at 228). Specific jurisdiction exists if the defendant's alleged liability arises out of or is related to an activity located within the forum. Id. at 576 (citing *Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984)).

*A. Specific Jurisdiction*

In *Moki Mac*, the plaintiffs' son, a Texas resident, died in an accident while on a hiking and river rafting trip in Arizona. *Id.* Moki Mac, the Utah-based company that coordinated the trip, intentionally solicited business in Texas through the following: regular national and local media advertisements; a mass and targeted direct-marketing email campaign; a mailing list; using particular customers in the Texas market as "group leaders" to plan, organize, and promote its trips; certain complimentary benefits as incentives to customers to book a trip; and the use of a travel agent in Houston, for which Moki Mac paid a fee. *Id.* at 577–78. Evidence existed that, in the previous five years, between seven and eleven percent of Moki Mac's customers were Texas residents. *Id.* at 579. The Texas Supreme Court held that Moki Mac's business with Texas residents stemmed from its marketing and advertising activities purposefully directed at gaining Texas customers, thus doing business in Texas. *Id.*

■■■ Nevertheless, the court concluded that the plaintiffs had not established specific jurisdiction over Moki Mac in Texas. Purposeful availment alone will not support the exercise of specific jurisdiction. *Id.* For specific jurisdiction, purposeful availment is only relevant if the defendant's liability arises from or relates to the forum contacts. *Id.* In *Moki Mac*, the court held that there must be a substantial connection between the defendant's forum contacts and the operative facts of the litigation. Id. at 585. The plaintiff alleged that her son's death arose out of Moki Mac's conduct because she was induced to send her son on the trip by the assurances of safety in Moki Mac's brochures. *Id.* The plaintiffs argued that, but for these assurances, they would not have sent their son on the rafting trip, and he would not have died on the hiking trail.

*Id.* The Texas Supreme Court observed that the operative facts of the lawsuit primarily concerned the Moki Mac employees' conduct of the hiking expedition and whether they exercised reasonable care in supervising the plaintiffs' son. *Id.* Thus, the court held that the alleged misrepresentation was not the subject matter of the case or related to the operative facts of the negligence action, making the assurances in the promotional materials too attenuated to establish specific jurisdiction. *Id.*

■■■ Applying the court's analysis in *Moki Mac* here, the Lamars cannot establish specific jurisdiction over Morgan's Rock in Texas. Much like the plaintiffs in *Moki Mac*, the Lamars allege that the accident arose out of Morgan's Rock's contacts with Texas, and the assurances that their travel from the airport to Morgan's Rock would be safe. The assurances here, however, are even more attenuated than in *Moki Mac*, as Anderson Mill, not Morgan's Rock, allegedly assured Nanci Lamar that their car travel would be safe. Thus, Morgan's Rock's alleged contacts with Texas are not related to the operative facts of their negligence action against Morgan's Rock, and specific jurisdiction does not exist. But the answer to the jurisdiction inquiry is incomplete—we must also examine general jurisdiction. The Texas Supreme Court's analysis in *Moki Mac* is again instructive: noting the general contacts the defendant had with the forum, the court remanded the case for consideration of whether Moki Mac was subject to general jurisdiction in Texas. *Id.* at 588.

### B. *General Jurisdiction*

■■■ General jurisdiction is personal jurisdiction over a defendant which does not arise out of or relate to the defendant's contacts with the forum. *PHC–Minden, L.P. v. Kimberly–Clark Corp.,* 235 S.W.3d 163, 167 (Tex.2007). General jurisdiction is based solely on the defendant's continu-

ous and systematic contacts with the forum. *Id.* at 169. A general jurisdiction inquiry requires a more demanding minimum contacts analysis than a specific jurisdiction inquiry. *Id.* at 168. General jurisdiction requires that the defendant be engaged in a longstanding business in the forum state, such as marketing or shipping products, performing services, or maintaining one or more offices there. *Id.*

In *Minden,* the Texas Supreme Court analyzed whether a Louisiana hospital's contacts with Texas were sufficient for supporting general jurisdiction. The hospital's only facility was located in Minden, Louisiana, and it did not advertise or own property in Texas, nor did it have a Texas office, bank account, or registered agent for service of process. *Id.* at 170. The plaintiffs relied on two isolated trips by employees traveling to Texas for seminars, Minden's purchases from Texas vendors, and three contracts with Texas entities to support general jurisdiction. *Id.* The Texas Supreme Court relied on the United States Supreme Court's holding in *Helicopteros* to conclude that the hospital's limited contacts with Texas were insufficient to support general jurisdiction because the *Helicopteros* Court had held that (1) multiple trips to Fort Worth did not support general jurisdiction because the trips did not enhance the company's contacts with Texas; and (2) mere purchases are not enough to support general jurisdiction if the cause of action is not related to those purchase transactions. *Id.* at 170–71 (citing *Helicopteros,* 466 U.S. at 418, 104 S.Ct. at 1868). Additionally, the Texas Supreme Court concluded that the hospital's contracts with Texas companies were "sporadic," not continuous and systematic. *Id.* at 171.

Here, the Lamars did not prove that Morgan's Rock and Poncon engaged in continuous and systematic contacts with Texas. That inability, however, may be attributed to the fact that Morgan's Rock refused to participate in even written jurisdictional discovery.

## C. *Jurisdictional Discovery*

Jurisdictional discovery is governed by Rule 120a(3) of the Texas Rules of Civil Procedure. Rule 120a(3) provides that a trial court may order a continuance to permit discovery to be had or depositions to be taken, or make any other order as is just, where it appears from the affidavits of a party opposing a special appearance that he cannot, for reasons stated in the affidavit, present facts essential to justify his opposition to the special appearance. TEX.R. CIV. P. 120a(3). Here, the Lamars moved three times for jurisdictional discovery, attaching affidavits to their motions each time. We review the trial court's denial of jurisdictional discovery for an abuse of discretion. *Barron v. Vanier,* 190 S.W.3d 841, 847 (Tex.App.-Fort Worth 2006, no pet.) (citing *BMC Software,* 83 S.W.3d at 800). Jurisdictional discovery "can be a vital part of resolving a special appearance." *Exito Elecs. Co. v. Trejo,* 142 S.W.3d 302, 307 (Tex.2004).

Morgan's Rock refused to participate in jurisdictional discovery because, it alleged, the affidavits attached to the Lamars' motions were insufficient to support jurisdictional discovery. *Barron* addressed the requirements of affidavits supporting a motion for jurisdictional discovery. 190 S.W.3d at 848–50. There, the Fort Worth Court of Appeals explained that jurisdictional discovery should seek evidence supporting jurisdiction over the case, or it is unnecessary. *See id.* at 848 (citing *Wyatt v. Kaplan,* 686 F.2d 276, 283 (5th Cir. 1982)). The plaintiff in *Barron* attached a list of information he sought to obtain through jurisdictional discovery, including information about the defendants' business dealings in Texas, communications with

Texas residents, advertising in Texas, Texas clients, mail, electronic, and telephone communications with Texas, travels to Texas, and information from one of the defendants regarding a portion of his affidavit. Id. at 849. The court granted jurisdictional discovery because it was possible that at least some of these categories would relate to personal jurisdiction. Id.; see also El–Fadl v. Cent. Bank of Jordan, 75 F.3d 668, 676 (D.C.Cir.1996) ("Even though El–Fadl's present jurisdictional allegations are insufficient, he has sufficiently demonstrated that it is possible that he could supplement them through discovery."); Caribbean Broad. Sys. Ltd. v. Cable & Wireless PLC, 148 F.3d 1080, 1090 (D.C.Cir.1998) ("[I]n order to get jurisdictional discovery a plaintiff must have at least a good faith belief that such discovery will enable it to show that the court has personal jurisdiction over the defendants.").

Similar to the defendant in Barron, Poncon averred in his affidavit that Morgan's Rock does not have an office or bank account in Texas, does not produce any advertising or printed materials for distribution in the United States, and has never entered into any contracts in Texas. Morgan's Rock contends that none of the affidavits produced by the Lamars in their efforts to gain jurisdictional discovery are sufficient because they do not directly contradict Poncon's affidavit. Cloutier's testimony, however, suggests that, at the very least, Morgan's Rock developed brochures and media CDs that it gave to Anderson Mill for use in promoting Morgan's Rock in Texas, and that Morgan's Rock derived a significant amount of business from Texas clients directed through its marketing efforts with Anderson Mill. In addition, the Lamars contend that Morgan's Rock markets to Texas clients through an interactive website. The list of information the Lamars sought in jurisdictional discovery includes times Poncon or a Morgan's Rock representative traveled to Texas on business, copies of contracts or business agreements executed in Texas, and letters, phone calls, emails, and other communications directed to Texas for business purposes. Additionally, the Lamars asked to cross-examine Poncon on the statements in his affidavit in light of Cloutier's testimony. Essentially, the Lamars sought to establish the degree to which Poncon and Morgan's Rock may solicit and conduct business in Texas in ways that are not easily investigated without procuring information directly from Poncon and Morgan's Rock. Given that the Texas Supreme Court in Moki Mac remanded the case for consideration of general jurisdiction where the plaintiffs established extensive business contacts with Texas, we conclude that the Lamars should have the opportunity to conduct discovery to determine if Poncon and Morgan's Rock have similar contacts. Thus, we hold that the trial court abused its discretion in denying jurisdictional discovery.

## Conclusion

We affirm the trial court's determination that Poncon and Morgan's Rock are not subject to specific jurisdiction in this case, but the trial court erred in denying jurisdictional discovery. The discovery sought could lead to admissible evidence on the issue of general personal jurisdiction. Thus, we reverse the trial court's order granting the special appearance, and remand the case for further proceedings.