**Reversed and Remanded and Memorandum Opinion filed May 27, 2021.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-19-00326-CV

---

### LG CHEM, LTD., Appellant

### V.

### MICHAEL  TURNER, Appellee

---

**On Appeal from the 234th District Court
Harris County, Texas
Trial Court Cause No. 2018-44826**

---

### MEMORANDUM  OPINION

In this interlocutory appeal, LG Chem, Ltd. appeals the trial court's denial of its special appearance.  In one issue, appellant contends that the trial court erred in finding that specific personal jurisdiction exists over appellant in Texas.  Because we conclude that appellee failed to show that appellant's Texas contacts share a substantial connection to the operative facts of appellee's claims, we reverse the order of the trial court.  Appellee raises a conditional cross-point and asks that we remand the case to the trial court to consider appellee's request for jurisdictional

discovery. We remand the case to the trial court for consideration of appellee's request for jurisdictional discovery.

## I. SPECIFIC JURISDICTION

Appellant argues that specific jurisdiction cannot be based on contacts with the forum that are unrelated to the claim at issue and that appellant's sales of other products to other customers in Texas has no bearing on the specific jurisdiction analysis because such sales are completely unconnected to appellee's injury. Appellee contends that the substantial connection exists because appellant ships this type of battery (18650 lithium-ion) into Texas to Stanley Black and Decker and this type of battery (18650 lithium-ion) injured appellee in Texas.

### A. Standard of Review

Whether a trial court has personal jurisdiction over a nonresident defendant is a question of law we review de novo. *Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 558 (Tex. 2018). When, as here, the trial court does not issue findings of fact and conclusions of law, all relevant facts that are necessary to support the judgment and supported by the evidence are implied. *Id*. When jurisdictional facts are undisputed, whether those facts establish jurisdiction is a question of law. *Id*.

When personal jurisdiction is challenged, the plaintiff and the nonresident defendant bear shifting burdens of proof. *Bell*, 549 S.W.3d at 559. The plaintiff bears the initial burden to plead sufficient allegations to bring the nonresident defendant within the scope of Texas's long-arm statute. *Id*. The trial court may consider the plaintiff's original pleadings as well as his response to the defendant's special appearance in determining whether the plaintiff satisfied his initial burden. *Washington DC Party Shuttle, LLC v. IGuide Tours*, 406 S.W.3d 723, 738 (Tex.

2

App.—Houston [14th Dist.] 2013, pet. denied) (en banc). The scope of review includes all evidence in the record. *Id*. at 729.

If the plaintiff meets his initial pleading burden, the burden shifts to the nonresident defendant to negate all bases of personal jurisdiction alleged by the plaintiff. *Bell*, 549 S.W.3d at 559. The defendant can negate jurisdiction on either a factual or legal basis. Factually, the nonresident defendant can present evidence that it has no contacts with Texas to disprove the plaintiff's allegations. *Kelly v. Gen. Interior Constr. Inc.*, 301 S.W.3d 653, 659 (Tex. 2010). Legally, the nonresident defendant can show that even if the plaintiff's alleged facts are true, the evidence is legally insufficient to establish jurisdiction; that the contacts do not constitute purposeful availment; for specific jurisdiction, that the claims do not arise from the contacts with Texas; or that the exercise of jurisdiction offends traditional notions of fair play and substantial justice. *Id*.

### B. Legal Principles

"Texas courts may exercise personal jurisdiction over a nonresident if '(1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction is consistent with federal and state constitutional due-process guarantees.'" *Bell*, 549 S.W.3d at 558 (quoting *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 149 (Tex. 2013)). The long-arm statute is satisfied when a defendant commits a tort in whole or in part in this state. *Id*. at 558–59 (citing Tex. Civ. Prac. & Rem. Code § 17.042(2)). However, allegations that a tort was committed in Texas do not necessarily satisfy the United States Constitution. *Id*. at 559.

To establish personal jurisdiction over a nonresident, federal due process requires that the nonresident must have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of

fair play and substantial justice.'" *Id*. (quoting *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945)). A nonresident establishes minimum contacts with a forum when it "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). "[T]he defendant's in-state activities 'must justify a conclusion that the defendant could reasonably anticipate being called into a Texas court.'" *Bell*, 549 S.W.3d at 559 (quoting *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 338 (Tex. 2009)).

When determining whether a defendant has purposefully availed itself of the privilege of conducting activities in Texas, we consider three factors:

> First, only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person. Second, the contacts relied upon must be purposeful rather than random, fortuitous, or attenuated. . . . Finally, the defendant must seek come benefit, advantage or profit by availing itself of the jurisdiction.

*Id*. (quoting *Moncrief Oil*, 414 S.W.3d at 151). We assess the quality and nature of the contacts, not the quantity. *TV Azteca v. Ruiz*, 490 S.W.3d 29, 38 (Tex. 2016).

A defendant's contacts may give rise to general or specific jurisdiction. *Bell*, 549 S.W.3d at 559.[1] For a Texas court to exercise specific jurisdiction over a nonresident defendant: (1) the defendant's contacts with Texas must be purposeful; and (2) the cause of action must arise from or relate to those contacts. *Id*. A defendant's awareness "that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product

---

[1] Only specific jurisdiction is at issue in this appeal. Appellee concedes that general jurisdiction is not available over appellant.

4

into the stream into an act purposefully directed toward the forum State." *Spir Star AG v. Kimich*, 310 S.W.3d 868, 873 (Tex. 2010). Purposeful conduct generally requires "some 'additional conduct'—beyond merely placing the product in the stream of commerce—that indicates 'an intent or purpose to serve the market in the forum State.'" *Id*. (quoting *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 112 (1987)). Examples of additional conduct may include "designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." *Asahi*, 480 U.S. at 112; *see also Spir Star*, 310 S.W.3d at 873.

The nonresident defendant's purposeful contacts "must be substantially connected to the operative facts of the litigation or form the basis of the cause of action." *Bell*, 549 S.W.3d at 559–60. Operative facts are the facts that "will be the focus of the trial, will consume most if not all of the litigation's attention, and the overwhelming majority of the evidence will be directed to that question." *Moki Mac*, 221 S.W.3d at 585.

## C. Background

Appellee alleged that he was injured when a lithium-ion battery used to power his e-cigarette device ignited while in his pocket and caused severe burns. The alleged lithium-ion battery used in his e-cigarette was an "Efest IMR 18650 battery." Appellee sued appellant and the retailer that sold appellee the lithium-ion battery. Appellee alleged that while the battery contained an "Efest wrapping," the battery was manufactured by appellant and sold to a company in China where it

5

was "re-wrapped."[2]

Appellee alleged that his injuries occurred in Texas, the "Efest IMR18650" battery was purchased in Texas, and appellee is a Texas resident. Appellee alleged that appellant "designed, manufactured, and placed the battery into the stream of commerce and conducts business in Texas in a continuous and systematic manner;" "boasts of leading the global market with its manufacture and sale of lithium-ion batteries; such as the . . . battery at issue in this case;" and "has a network of wholly-owned subsidiaries in the United States that work together to sell various products throughout the United States." Appellee contended that appellant does not make any distinction between itself and its subsidiaries when marketing products in the United States. Appellee alleged that appellant targets the U.S. market in the sale of lithium-ion batteries and does "business every day with companies at the center of the U.S. economy." Appellee contended that appellant maintains relationships with various U.S. entities throughout the country, including entities with locations in Texas. Appellee alleged the nature of such relationships consists of shipping lithium-ion batteries directly from Korea to entities in Texas, including "battery packers" that purchase single lithium-ion battery cells and incorporate them into larger battery packs.

Appellant filed a special appearance contesting personal jurisdiction in Texas and attached the affidavit of a senior manager. The manager contended that appellant has no systematic connections to Texas and has not engaged in any "purposeful, forum-directed activities related to" appellee's claims. The manager attested that appellant has never had a Texas office, telephone number, post office box, mailing address, or bank account; has never been registered to do business in

---

[2] The company alleged to have re-wrapped the battery is Shenzen Fest Technology Co., Ltd. Shenzen is not a party to this appeal.

Texas; owned or leased real property in Texas; or had a registered agent for service of process in Texas. The manager attested that appellant has no relationship with and never authorized Shenzhen to rewrap its "LG 18650 lithium-ion power cells." The manager attested that appellant does not design, manufacture, distribute, advertise, or sell the LG 18650 lithium-ion battery for use by individual consumers as a replaceable, rechargeable battery in electronic cigarette devices. The manager further denied that appellant has any relationship with the retailer that sold appellee the LG 18650 lithium-ion battery and never authorized the retailer to distribute or sell the LG 18650 lithium-ion battery. Appellant "has never authorized any manufacturer, wholesaler, distributor, retailer, or re-seller to advertise, distribute, or sell" the LG 18650 lithium-ion battery for use by individual consumers "as replaceable, rechargeable batteries in e-cigarette devices." Instead, the LG 18650 lithium-ion battery is manufactured "for use in specific applications by sophisticated companies." Appellant's manager also attested that appellant did not design nor manufacture the LG 18650 lithium-ion battery in Texas.

In his response, appellee conceded that general jurisdiction was not appropriate against appellant. Appellee introduced evidence of appellant's website and marketing materials and argued that appellant "boasts of leading the global market with its manufacture and sale of lithium-ion batteries, such as the cylindrical 18650 batteries at issue in this case." Appellee contended that appellant has a network of wholly owned subsidiaries within the United States[3] that "sell various products nationwide" that make nearly $0.76 million every day in batteries sold or imported into the United States. Appellee argued that appellant "readily admitted it targets the U.S. market in the sale of lithium-ion batteries for over a decade and derives substantial revenue from its daily activities in the United

_____

[3] Appellee further alleged that appellant does not make any distinction between itself and these wholly owned subsidiaries when marketing its products to the United States.

States."  Appellee alleged that appellant has a "long-standing" relationship with Stanley Black and Decker in Texas and that appellant provides "some" 18650 batteries for use in power tools.  Appellee contended that appellant "ships its batteries directly to [Stanley Black and Decker], and therefore purposefully targets the Texas market."  There is also "at least one LG plant" in Texas, although appellee conceded that without additional information, he was not able to ascertain appellant's relationship with this Texas LG plant.  Appellee alleged that one of appellant's subsidiaries, LG Chem America, Inc., maintains a license to do business in Texas.  Appellant and LG Chem America "work in concert" to distribute batteries in the United States.  Lastly appellee contended that appellant is defending other "similar lawsuits" in Texas "without contesting jurisdiction" citing to one case.

### D. Substantial Connection

That the cause of action arises from or is related to the defendant's forum contacts, "lies at the heart of specific jurisdiction by defining the required nexus between the nonresident defendant, the litigation, and the forum." *Moki Mac*, 221 S.W.3d at 579.  To satisfy this requirement, there must be a substantial connection between the defendant's contacts and the operative facts of the litigation. *Spir Star AG*, 310 S.W.3d at 874.  "That similar products were sold in Texas would not create a substantial connection as to products that were not." *Id*.  Here, such a substantial connection is lacking. *See Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 137 S. Ct. 1773, 1781 (2018) ("Nor is it sufficient—or even relevant—that BMS conducted research in California on matters unrelated to Plavix.  What is needed—and what is missing here—is a connection between the forum and the specific claims at issue."); *see also Ford Motor Co. v. Montana Eighth Judicial Dist. Court*, 141 S. Ct. 1017, 1028 (2021) ("Ford had advertised, sold, and serviced

8

those two car models in both States for many years. (Contrast a case, which we do not address, in which Ford marketed the models in only a different State or region). . . . Ford had systematically served a market in Montana and Minnesota for the very vehicles that the plaintiffs allege malfunctioned and injured them in those States.").

Appellee argues that this case has "the precise connections between the claims at issue and the forum that were absent in *Bristol Myers*." In *Bristol-Myers* the Supreme Court concluded that a group of non-resident plaintiffs could not establish the "relatedness" component of the specific jurisdiction test because, although *Bristol-Myers* had many connections to the forum (California), the non-resident plaintiffs' claims did not share a connection with the forum. *See id.* The Supreme Court rejected the notion that "the more wide ranging the defendant's forum contacts, the more readily is shown a connection between the forum contacts and the claim to specific jurisdiction." *Id*. at 1778. Instead, the Supreme Court criticized California's approach stating that under it, "the strength of the requisite connection between the forum and the specific claims at issue is relaxed if the defendant has extensive forum contacts that are unrelated to those claims." *Id*. at 1781. "For specific jurisdiction, a defendant's general connections with the forum are not enough." *Id*. The Supreme Court then focused on the connections lacking with the chosen forum—that the non-resident plaintiffs were not prescribed Plavix in California, did not purchase Plavix in California, did not ingest Plavix in California, and were not injured by Plavix in California. *Id*. Thus, for specific jurisdiction purposes, it did not matter that the defendant had a presence in California, including research and laboratory facilities, and had sold millions of Plavix pills in the state. *Id*. at 1778. Because there was no connection between the defendant's California contacts and the non-resident plaintiffs' claims, specific

9

jurisdiction could not be exercised.  *See id*. at 1781.

Here, while it is undisputed that appellant sells some amount and some types of lithium-ion batteries into Texas and has a relationship with Stanley Black and Decker, there is no evidence, nor even an allegation that these connections with Texas are in any way connected to appellee's claims.  There is no evidence that, after manufacturing the 18650 lithium-ion battery and placing it into the stream of commerce, appellant did anything further to bring it into Texas.  Appellee did not allege that the batteries that appellant ships to Stanley Black and Decker are among those that end up in Texas smoke shops for purchase by consumers, only that the same *type* of battery, the 18650 lithium-ion battery, is shipped by appellant to Stanley Black and Decker in Texas.  Plaintiff also did not allege that appellant's subsidiaries are connected in any way to the sale or distribution of appellant's lithium-ion batteries in Texas smoke shops.  Appellee generally alleged that appellant markets its batteries to the United States but has not alleged that appellant has specifically targeted Texas, marketed this type of battery to Texas, or designed this battery for the Texas market.  *See Spir Star*, 310 S.W.3d at 873 (holding that exercising jurisdiction over nonresident requires some additional conduct that indicates an intent or purpose to serve the market in the forum State).

Appellee argues that his claims arise out of the same product that appellant directly sells in Texas to Stanley Black and Decker.  However, while appellee alleged that appellant has targeted the U.S. market and derived substantial revenue from sales of lithium-ion batteries generally, appellee failed to detail or allege that appellant had derived substantial revenue from Texas sales of its lithium-ion batteries generally or with relation to the specific battery at issue in this case.  Appellee only alleged that appellant has a long-standing relationship with Stanley Black and Decker and believes appellant to ship lithium-ion batteries directly into

10

Texas, but appellee did not detail the amount or the types of lithium-ion batteries that are shipped to Texas by appellant. Appellee alleged, "It is known within the general public that power tools, such as cordless drills, are sold with rechargeable battery packs and that at least some of the batteries used in said battery packs are lithium-ion 18650 batteries manufactured by [appellant]." Appellant's manager attested that appellant manufactures this type of battery "for use in specific applications by sophisticated companies" and "does not design, manufacture, distribute, advertise, or sell lithium-ion power cells for use by individual consumers as replaceable, rechargeable batteries in electronic cigarette devices." The record is devoid of any other connection between appellant, the type of battery at issue, and Texas. *See Schexnider v. E-Cig Central, LLC*, No. 06-20-00003-CV, 2020 WL 6929872, *9 (Tex. App.—Texarkana Nov. 25, 2020, no pet.) (mem. op.) ("[T]here was no evidence that LG Chem had sold or shipped a significant amount of its HG2 batteries in Texas. There was no evidence that LG Chem or any of its authorized distributors had shipped or sold any HG2 batteries to E-Cig or any other Texas customer, except SBD. The evidence and unnegated allegations showed only that LG Chem sold an undetermined amount of its HG2 batteries to SBD for use in its battery packs, some of which came to Texas. There was no evidence or unnegated allegations that Schexnider's claims arose from LG Chem's only Texas contacts, the sale of its HG2 batteries to SBD for use in its battery packs."); *see also LG Chem Am., Inc. v. Morgan*, No. 01-19-00665-CV, 2020 WL 7349483, *7, *11 (Tex. App.—Houston [1st Dist.] Dec. 15, 2020, no pet. h.) (mem. op.) (considering plaintiff's "undisputed allegations and evidence . . . that LGC designed and manufactured its lithium-ion 18650 batteries for the Texas market, advertised them in Texas, and marketed them in Texas through a distributor that sold them in Texas" and concluding that these allegations showed "that [the plaintiff's] claims arise from or relate to the manufacture, marketing, and sale of

11

LGC's batteries in Texas, which injured [the plaintiff] in Texas").[4]

As the Supreme Court explained in *World-Wide Volkswagen* and reiterated again in *Bristol-Myers*, "[e]ven if the defendant would suffer minimal or no inconvenience from being forced to litigate before the tribunals of another State; even if the forum State has a strong interest in applying its law to the controversy; even if the forum State is the most convenient location for litigation, the Due Process Clause, acting as an instrument of interstate federalism, may sometimes act to divest the State of its power to render a valid judgment." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 294 (1980); *see also Bristol-Myers*, 137 S. Ct. at 1780–81. Because appellee failed to show that appellant's Texas contacts share a substantial connection to the operative facts of appellee's claims, we reverse the order of the trial court.

## II.   JURISDICTIONAL DISCOVERY

Appellee raises a conditional cross-point, requesting that we remand to allow the trial court to consider whether to allow jurisdictional discovery. Appellee requested additional discovery in his response to appellant's special appearance. The trial court did not rule on this request because it determined that it had jurisdiction over appellant and denied appellant's special appearance. A trial court has discretion to allow additional time for jurisdictional discovery. *See Lamar v. Poncon*, 305 S.W.3d 130, 139 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

---

[4] Unlike in *Lg Chem America, Inc. v. Morgan*, in this case appellees did not allege or provide evidence that appellant "designed and manufactured its lithium-ion 18650 batteries for the Texas market, advertised them in Texas, and marketed them in Texas through a distributor that sold them in Texas." 2020 WL 7349483, *7, *11. Instead, appellee generally alleged that appellant ships batteries to Stanley Black and Decker, some of which are 18650 lithium-ion batteries, and that because appellant ships its batteries directly to Stanley Black and Decker, appellant purposefully targets the Texas market. In *Morgan*, the plaintiff "produced more than 2,200 pages of spreadsheets that he argued showed" numerous shipments by LG Chem, Ltd., into Texas to various companies within Texas.

In this case, it is appropriate to remand to the trial court to consider whether to allow jurisdictional discovery. *See id.* (remanding for further discovery concerning general jurisdiction); *Morris Indus., Inc. v. Trident Steel Corp.*, No. 01-09-01094-CV, 2010 WL 4484351, at *4–5 (Tex. App.—Houston [1st Dist.] Nov. 10, 2010, no pet.) (mem. op.) (reversing trial court's denial of special appearance and remanding for jurisdictional discovery).

## III. CONCLUSION

Because we conclude that appellee has not shown that appellant's Texas contacts are substantially connected to the operative facts of this case, we reverse the trial court's order. We remand the case for the trial court to consider whether to allow appellee to obtain jurisdictional discovery.

/s/ Ken Wise
Justice

Panel consists of Chief Justice Christopher and Justices Wise and Zimmerer.