MOKI MAC RIVER EXPEDITIONS,
Appellant

v.

Charles DRUGG and Betsy Drugg, Individually and as Representatives of the Estate of Andrew Patrick Drugg, Appellees.

No. 05–03–00051–CV.

Court of Appeals of Texas,
Dallas.

Dec. 4, 2008.

E. Thomas Bishop, Alexander N. Beard, Stephanie Ann Finch, Dallas, TX, for Appellant.

Michael Braden, Dallas, TX, Steven E. Aldous, Robert R. Varner, Jr., Braden, Varner & Aldous, P.C., Dallas, TX, for Appellees.

Before Justices WHITTINGTON, WRIGHT, and BRIDGES.

### OPINION ON REMAND

Opinion by Justice BRIDGES.

On the Court's own motion, we withdraw our opinion and vacate our judgment of December 2, 2008. This is now the opinion of this Court.

Moki Mac River Expeditions appeals the denial of its special appearance. On original submission, we issued an opinion affirming the trial court's denial of Moki Mac's special appearance on the basis that exercising specific jurisdiction was proper. Moki Mac sent two sales brochures to Annie Seals in Texas detailing pricing and schedules for upcoming excursions. Seals informed Moki Mac of the interest of several others in Texas with whom she shared the literature, including members of the Drugg family. Charles and Betsy Drugg's thirteen-year-old son, Andy, died on a June 2001 river rafting trip in Arizona with Moki Mac. The Druggs filed suit in Texas for wrongful death due to Moki

Mac's negligence. The trial court denied Moki Mac's special appearance, and this Court affirmed on the basis of specific jurisdiction. The Supreme Court of Texas reversed and remanded for this Court to consider whether Moki Mac is subject to general jurisdiction in Texas.

The Supreme Court of Texas concluded Moki Mac had sufficient purposeful contact with Texas to show it purposely availed itself of doing business in Texas. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 579 (Tex.2007). However, the supreme court further concluded that the relationship between the operative facts of the litigation and Moki Mac's promotional activities in Texas were too attenuated to satisfy specific jurisdiction's due-process concerns. *Id.* at 588. The supreme court reversed this Court's original opinion and remanded this case for consideration of whether Moki Mac is subject to general jurisdiction in Texas. We reverse the trial court's order denying Moki Mac's special appearance.

 Whether a trial court has personal jurisdiction over a nonresident defendant is a question of law. *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 790–91 (Tex.2005); *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex.2002); *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 805–06 (Tex.2002); *Hoffmann v. Dandurand*, 180 S.W.3d 340, 345 (Tex.App.-Dallas 2005, no pet.). Because the trial court's exercise of personal jurisdiction over a nonresident defendant is a question of law, an appellate court reviews the trial court's determination of a special appearance de novo. *Moki Mac*, 221 S.W.3d at 574; *BMC Software*, 83 S.W.3d at 794.

 The Texas long-arm statute permits Texas courts to exercise jurisdiction over nonresident defendants that do business in Texas. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 17.041–.045 (Vernon 2008); *PHC–Minden, L.P. v. Kimberly–Clark Corp.*, 235 S.W.3d 163, 166 (Tex.2007); *BMC Software*, 83 S.W.3d at 795. The broad language of section 17.042 extends Texas courts' personal jurisdiction "as far as the federal constitutional requirements of due process will permit." *PHC–Minden*, 235 S.W.3d at 166.

 The Due Process Clause of the Fourteenth Amendment operates to limit the power of a state to assert personal jurisdiction over a nonresident defendant. *Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal., Solano County*, 480 U.S. 102, 108, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413–14, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 294, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Under the Due Process Clause, personal jurisdiction over a nonresident defendant is constitutional when the nonresident defendant has established minimum contacts with the forum state and the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Burger King*, 471 U.S. at 476, 105 S.Ct. 2174.

 General jurisdiction may exist over a nonresident defendant in a lawsuit where the cause of action does not arise out of or relate to the nonresident defendant's contacts with the forum state. *See Helicopteros*, 466 U.S. at 414 n. 9, 104

S.Ct. 1868; *PHC–Minden*, 235 S.W.3d at 168. General jurisdiction is present when the nonresident defendant's contacts in a forum state are continuous and systematic. *Helicopteros*, 466 U.S. at 416–17, 104 S.Ct. 1868; *PHC–Minden*, 235 S.W.3d at 167–69; *Capital Tech. Info. Servs., Inc. v. Arias & Arias Consultores*, No. 05–07–00280–CV, 2008 WL 4838421, at *6 (Tex.App.-Dallas Nov.10, 2008, no pet. h.). Personal jurisdiction over nonresident defendants is constitutional when: (1) the defendant has established minimum contacts with the forum state and (2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *PHC–Minden*, 235 S.W.3d at 166. A general jurisdiction inquiry is very different from a specific jurisdiction inquiry and involves a "more demanding minimum contacts analysis" than for specific jurisdiction. *PHC–Minden*, 235 S.W.3d at 168; *CSR Ltd. v. Link*, 925 S.W.2d 591, 595 (Tex.1996).

Usually, the defendant must be engaged in longstanding business in the forum state, such as marketing or shipping products, or performing services or maintaining one or more offices there; activities that are less extensive than that will not qualify for general in personam jurisdiction. *PHC–Minden*, 235 S.W.3d at 168 (quoting 4 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1067.5 (2008)).

As the Texas Supreme Court has noted in *PHC–Minden*, the United States Supreme Court has only upheld a finding of general jurisdiction in one case: *Perkins v. Benguet Consolidated Mining Company*, 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952). *See PHC–Minden*, 235 S.W.3d at 167. In *Perkins*, a company's president, who was also its general manager and principal shareholder, maintained an office in Ohio in which he "did many things on behalf of the company." *Perkins*, 342 U.S.

at 447–48, 72 S.Ct. 413; *PHC–Minden*, 235 S.W.3d at 168. He maintained company files in Ohio, carried on correspondence from there, drew and distributed salary checks from his Ohio office, used two Ohio bank accounts for company funds and had an Ohio bank act as transfer agent for the company's stock, held director's meetings in Ohio, supervised policies dealing with the rehabilitation of the corporation's properties in the Philippines there, and dispatched funds from Ohio bank accounts to cover purchases of machinery for such rehabilitation. *Id.* Under these circumstances, the Court held "it would not violate federal due process for Ohio either to take or decline jurisdiction of the corporation in this proceeding." *Id.* at 448, 72 S.Ct. 413.

General jurisdiction has been described as "dispute-blind," an exercise of the court's jurisdiction made without regard to the nature of the claim presented. *PHC–Minden*, 235 S.W.3d at 168. Some commentators suggest using an analytical device whereby the court constructs a hypothetical claim without any forum connection "to insure that any related forum activities of the defendant are not improperly infiltrating the dispute-blind query." *PHC–Minden*, 235 S.W.3d at 168–69 (citing Charles W. "Rocky" Rhodes, *Clarifying General Jurisdiction*, 34 SETON HALL L.REV. 807, 819 (2004)). The example given is whether a corporate defendant's actual activities in California are so pervasive and extensive that it should be amenable to general jurisdiction in California for a hypothetical employment claim filed by a New York citizen employed at corporate headquarters in New York. *See PHC–Minden*, 235 S.W.3d at 169; *Clarifying General Jurisdiction*, 34 SETON HALL L.REV. at 819–20. Such an inquiry properly frames the issue, as general jurisdiction is based solely

on the defendant's "continuous and systematic" contacts with the forum. *Helicopteros,* 466 U.S. at 416, 104 S.Ct. 1868; *PHC–Minden,* 235 S.W.3d at 169.

■ With this in mind, we turn to an analysis of Moki Mac's contacts with Texas. Moki Mac knowingly sells rafting trips to Texas residents and purposefully advertises and directs marketing efforts in Texas with the intent to solicit business from this state. The evidence in this case indicates Moki Mac intends to serve the Texas market. Moki Mac also hired public relations firms to target media groups and tour operators, some of which were located in Texas. In 1996, Moki Mac promoted its trips within Texas by taking out an advertisement in the *Austin Chronicle.*

Moki Mac's efforts to solicit business in Texas also included mass and targeted direct-marketing email campaigns. Moki Mac compiled a mailing list by collecting contact information from interested parties either by phone, email, or through the company's website. In addition, Moki Mac obtained a list of potential customers from a commercial source. Both its own mailing list and the commercial mailing list included Texas residents. The company would automatically send brochures and trip information to people who had previously expressed interest in a trip, even in years when that person had not expressed interest. As part of these promotions, Moki Mac offered a "free float" as an incentive to customers who coordinated a group of ten or more. Moki Mac provided this compensation to at least two Texas residents. Moki Mac occasionally provided musicians to accompany float trips free of charge. On one particular trip, Moki Mac permitted a string quartet from Fort Worth to accompany a Texas group on its float trip, free of charge to the musicians. Moki Mac also paid a fee to a travel agency located in Houston, resulting in multiple trips involving Texas residents.

In addition, Moki Mac established channels of regular communication with its customers in Texas. It was Moki Mac's practice to utilize particular customers, who would become de facto group leaders, to plan, organize, and promote its trips. Annie Seals was one such contact. By communicating with all of its customers through correspondence with a single group leader, Moki Mac streamlined its reservations process. Moki Mac kept these communication channels open; it was Moki Mac's practice to automatically send information regarding new trips, schedules, and prices to those on its mailing list who had been customers or who had simply expressed interest in a trip within a three-year period. There is evidence that, over a five-year period, between 105 and 128 of Moki Mac's customers (between 7–11%) were from Texas. Seals shared information regarding Moki Mac with the Druggs, eventually leading to the Druggs' son going on a river rafting trip with Moki Mac in Arizona.

Moki Mac did not directly solicit the Druggs to participate in the trip. All of Moki Mac's contacts with Texas relate to a well-organized marketing program directed toward Texas residents. However, Moki Mac never maintained an office in Texas (the deciding factor in *Perkins* ), *see Perkins,* 342 U.S. at 447–48, 72 S.Ct. 413, and never had any employees, representatives, or sales agents in Texas (as in *Helicopteros* ), *see Helicopteros,* 466 U.S. at 416–17, 104 S.Ct. 1868. Moki Mac has no assets, property, or bank accounts in Texas, has never operated rafting or hiking trips in Texas, and does not have a registered agent for service of process in Texas. These are all contacts that have been mentioned as indicia of continuous and system-

atic presence in a forum, and all are absent here.

■ Even when taken together, Moki Mac's Texas contacts are not "continuous and systematic general business contacts" sufficient to support general jurisdiction, particularly when compared to the substantial, regular business activities conducted by the nonresident defendant in *Perkins*. *Helicopteros*, 466 U.S. at 416, 104 S.Ct. 1868; *Perkins*, 342 U.S. at 447–48, 72 S.Ct. 413; *PHC–Minden*, 235 S.W.3d at 171. Instead, the facts here are more like those described in *Helicopteros*: the nonresident defendant had contacts with Texas but none sufficient to support general jurisdiction. *See PHC–Minden*, 235 S.W.3d at 171. When we consider whether Moki Mac's actual activities in Texas are so pervasive and extensive that it should be amenable to general jurisdiction in Texas for a hypothetical employment discrimination claim filed by a Utah citizen against Moki Mac, a Utah corporation, we conclude Moki Mac's activities are not so pervasive and extensive. *See PHC–Minden*, 235 S.W.3d at 169; *Clarifying General Jurisdiction*, 34 SETON HALL L.REV. at 819–20. Accordingly, we conclude that exercising general jurisdiction over Moki Mac under these facts does not comport with traditional notions of fair play and substantial justice. *See PHC–Minden*, 235 S.W.3d at 166.

We reverse the trial court's order denying Moki Mac's special appearance and render judgment dismissing all claims against Moki Mac.