**TEXVA, INC. and R. Bradley Bierman, Appellants**

v.

**James BOONE and Cindy Hayes, Appellees.**

**No. 05–08–01564–CV.**

Court of Appeals of Texas, Dallas.

Nov. 12, 2009.

Raymond V. Jobe, Dallas, TX, for Appellant.

Mark A. Alexander, Addison, TX, Abhay Dhir, Irving, TX, for Appellee.

Before Chief Justice WRIGHT, and Justices RICHTER and LANG.

## OPINION

Opinion By Justice RICHTER.

TexVa, Inc. ("TexVa") and R. Bradley Bierman ("Bierman") appeal the trial court's order granting the special appearances of Cindy Hayes ("Hayes") and James Boone ("Boone"), both residents of California. Appellants contend that the trial court erred in sustaining the special appearances of Boone and Hayes. For the reasons set forth below, we conclude that Hayes' and Boone's contacts with the State of Texas are sufficient to support specific jurisdiction, and the exercise of jurisdiction over them by a Texas court is consistent with traditional notions of fair play and substantial justice. Accordingly, we reverse the trial judge's order and remand this case for further proceedings.

## BACKGROUND

Bierman, a resident of Texas, and TexVa, a Texas corporation, filed suit against Boone and Hayes, both residents of California. The claims raised in this proceeding are for breach of contract, breach of fiduciary duty, negligent misrepresentation and shareholder oppression related to a business they own. Currently, the parties

operate a company known as CoreTex Products, Inc. ("CoreTex"). CoreTex is in the business of formulating and selling skin care products. It is organized as a Texas corporation. However, Bierman, Hayes and Boone, first started doing business in 1999 through a partnership called CoreTex Products ("CoreTex Partnership"). CoreTex Partnership was owned equally by CoreLinks Systems ("CoreLinks"), a partnership owned by appellees, Boone and Hayes, and TexVa, owned in part by Bierman.

When the parties first commenced business as CoreTex Partnership they agreed to operate out of their respective homes. Bierman has continuously operated from his home in Plano, Texas and Hayes and Boone operate from Bakersfield, California. During this time period, Bierman's son was hired to develop a domain for CoreTex Products. Bierman's son is also a resident of Texas, although he was a student at Tulane University at that time. Bierman testified that his son had sole responsibility for creating the web site, while Boone claimed that they created it together. This dispute is not material to our analysis because the business records admitted at the hearing show that Bierman's son was the technical and administrative contact for issues with the website and provided a Texas contact number and Plano address on behalf of CoreTex Products. Tax returns filed on behalf of CoreTex Partnership establish that the parties operated as a partnership for two years prior to incorporation. Schedule K–1 shows that profits or losses were split evenly between CoreLinks and TexVa for operations in 1999 and 2000.

In late 2000, the parties decided to incorporate and CoreTex Products, Inc. ("CoreTex"), a Texas corporation, was formed. The parties agreed to have Bierman's father, a Texas lawyer, incorporate CoreTex for them. The parties offered conflicting testimony as to why Texas was chosen as the state of incorporation. Boone testified that it was merely as a convenience because Bierman's father would prepare the documents for free. Bierman testified that Texas was chosen because of its favorable tax rate and other advantages. CoreTex is equally owned by TexVa and CoreLinks. Bierman is the president of CoreTex, Boone is the vice-president and treasurer and Hayes is the secretary. Bierman and Boone are the directors of CoreTex.

It is undisputed that CoreTex is headquartered in Bakersfield, California. Almost all of CoreTex's business is conducted out of its Bakersfield office. All corporate brochures and invoices list the Bakersfield address. However, Bierman retains an office in his home in Plano, Texas and conducts some CoreTex business from that location. Bierman was primarily responsible for EPA and FDA regulations and helped create formulations and trademarks. Bierman filed trademark registrations for CoreTex. Three Certificates of Registration were issued by the U.S. Patent and Trademark Office in November of 2004. All three certificates show CoreTex as the owner, and use the Plano, Texas address. The location of the registered agent is also in Plano, Texas. From the commencement of the relationship as partners, through the present, CoreTex has had some suppliers and customers in Texas, although the number is disputed.

The appellees testified at the special appearance hearing that they have traveled to Texas only four times. Two trips were for personal reasons and two were business trips as representatives of CoreTex. The first of the two business trips took place after Bierman's role in the corporation had diminished and Boone and Hayes

wanted to find out what Bierman wanted to do with the company. The issue of selling his interest was raised, but it is disputed who raised the issue. Hayes had people in California, including his son, who were interested in possibly purchasing TexVa's interest in the business. Bierman was uncertain what he wanted to do with the business or its worth and requested some financial records.

Bierman subsequently obtained copies of the tax returns and was surprised by the amount of salary that Boone was being paid. Bierman testified that TexVa was not receiving payments regularly and Hayes and Boone had told him it was because they were short on funds. After Bierman had reviewed the tax returns there was a second meeting in Texas. There is also a factual dispute concerning what transpired at this meeting, however, it is clear that the meeting was very short because a dispute arose over Boone's salary.

It is undisputed that Bierman is not currently involved in the day to day management of CoreTex. There has also been little, to no contact, between the parties for the past year or more.

Suit was filed on March 24, 2008, against CoreTex, Boone and Hayes. Boone and Hayes filed special appearances and a hearing was held on July 3, 2008. The trial court granted the special appearances, but did not issue findings of fact.

## BURDEN OF PROOF
## AND STANDARD
## OF REVIEW

The plaintiff bears the initial burden of pleading sufficient allegations to establish personal jurisdiction over a defendant. *BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 793 (Tex.2002). When a nonresident challenges jurisdiction through a special appearance, it carries the burden of negating all bases for jurisdiction. *Id.*

Whether a trial court has personal jurisdiction over a defendant is a legal issue, which is subject to de novo review. *BMC Software,* 83 S.W.3d at 794. Where the trial court denies a special appearance and the court issues findings of fact and conclusions of law, the findings of fact may be challenged on legal and factual sufficiency grounds. *Id.* Legal conclusions may not be challenged for factual insufficiency. *Id.* If the trial judge does not issue findings of fact and conclusions of law then "all facts necessary to support the judgment and supported by the evidence are implied." *BMC Software,* 83 S.W.3d at 795. When the clerk's and court reporter's record are included in the appellate record the implied findings are not conclusive and may be challenged on appeal for legal and factual sufficiency. *Id.* In this case the trial court did not issue findings of fact and conclusions of law, but the clerk's and court reporter's record have been included in the appellate record. Therefore, this Court reviews both legal and factual sufficiency. When considering legal sufficiency, "the no-evidence challenge fails if there is more than a scintilla of evidence to support the finding." *Id.* When factual sufficiency is challenged the trial court's decision may only be set aside if "its ruling is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust." *Tempest Broadcasting Co. v. Imlay,* 150 S.W.3d 861 (Tex.App.-Houston [14th Dist.] 2004, no pet.), quoting, *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

## PERSONAL JURISDICTION

A. *Long Arm Statute and Minimum Contacts.*

Appellees Hayes and Boone are residents of California. A Texas court

may exercise jurisdiction over a nonresident defendant when two conditions are met. First, the Texas long arm statute authorizes the exercise of jurisdiction. Second, the exercise of jurisdiction must satisfy the constitutional requirement of due process. *American Type Culture Collection, Inc. v. Coleman,* 83 S.W.3d 801, 806 (Tex.2002). The Texas long arm statute authorizes Texas courts to exercise jurisdiction over a nonresident defendant who "does business" in the state, including the commission of a tort, in whole or in part, in this state. TEX. CIV. PRAC. & REM. CODE ANN. § 17.042 (Vernon 2008). The broad language of the Texas long arm statute has been interpreted to allow Texas courts to exercise jurisdiction "as far as the federal constitutional requirements of due process will permit." *BMC Software,* 83 S.W.3d at 795.

There are two requirements to satisfy the constitutional requirement of due process: (1) the defendant had sufficient "minimum contacts" with the forum state, and (2) maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Minimum contacts requires that the nonresident defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its law." *Id.,* 326 U.S. at 319, 66 S.Ct. 154.

The defendant's minimum contacts with the forum can give rise to either general or specific jurisdiction. General jurisdiction is found when the defendant's contacts are "continuous and systematic" so that the state would have jurisdiction even if the claim did not arise from the activities conducted in the forum. *BMC Software,* 83 S.W.3d at 796. On the other hand, specific jurisdiction is limited to where the defendant's alleged liability arises from or is related to activity conducted in the forum state. *Id.*

## B. General Jurisdiction

Appellants argue that Hayes' and Boone's contacts with Texas are sufficient for a Texas court to exercise general jurisdiction over them. The "minimum contacts inquiry is broader and more demanding when general jurisdiction is alleged, requiring a showing of *substantial activities* in the forum state." *Schlobohm v. Schapiro,* 784 S.W.2d 355, 357 (Tex. 1990) (emphasis added). This Court recently analyzed the requirements for general jurisdiction in *Moki Mac River Expeditions v. Drugg,* 270 S.W.3d 799 (Tex. App.-Dallas 2008, no pet.). In *Moki Mac* we noted that general jurisdiction is "dispute blind" and the availability of jurisdiction may be tested against a hypothetical claim that has no connection with the forum. *Id.* at 802. We therefore examine Hayes' and Boone's activities in Texas to determine if they satisfy this requirement.

The record shows that Hayes' and Boone's contacts with the State of Texas are limited to their business relationship with Bierman and TexVa, first as partners and later as officers and director of CoreTex. They own no real property in the state. They do not personally have any bank accounts or offices in the state. Nor do they frequent the State of Texas for personal reasons. Instead, their activities in or directed at Texas have been limited to involvement with CoreTex. When we consider those facts in contrast with the fact that Hayes and Boone reside in California and conduct most of their business operations in California, we conclude that their contacts with Texas are not continuous and systematic and are not sufficient to exercise general jurisdiction over them.

## C. *Specific Jurisdiction*

Specific jurisdiction has two requirements: "(1) the defendant's contacts with the forum must be purposeful, and (2) the cause of action must arise from or relate to those contacts." *American Type Culture*, 83 S.W.3d at 806. We have already noted that all of the appellees' contacts with Texas relate to the management and control of Core Tex. Appellants allege that Boone, as an officer and director of a Texas corporation, and Hayes as an officer, have taken control of the corporation resulting in injury to the remaining director and shareholder, both residents of Texas. Appellants argue that the ongoing business relationship between the California and Texas residents, and subsequent dispute over control of a Texas corporation satisfies the conducting business requirement in this state for purposes of personal jurisdiction. We agree.

In *Rittenmeyer v. Grauer*, 104 S.W.3d 725, 732 (Tex.App.-Dallas 2003, no pet.) this Court held that "a nonresident director of a foreign corporation is not subject to personal jurisdiction solely because the corporation has its *headquarters* in Texas." (Emphasis in original). However, in reaching this conclusion we discussed and distinguished the facts in *Rittenmeyer* from those in *Pittsburgh Terminal Corp. v. Mid Allegheny Corp.*, 831 F.2d 522, 527 (4th Cir.1987). In *Pittsburgh Terminal*, the Fourth Circuit concluded that personal jurisdiction existed over a nonresident director of a corporation that was incorporated in West Virginia and controlled by West Virginia law, even where the acts complained of were taken by the director when he was physically outside the forum state. We quoted the court's reasoning:

> Excellent reasons exist for allowing a State to assert jurisdiction over nonresident directors of domestic corporations. A chartering State has a strong, even compelling interest in providing a forum for redressing harm done by corporate fiduciaries, harm endured principally by a resident of that State, the corporation.... Given the high degree of regulation over corporate fiduciaries, the State's interest in providing a convenient forum for a derivative suit charging misfeasance or nonfeasance of a director cannot be overemphasized.

*Rittenmeyer*, 104 S.W.3d at 732, *quoting Pittsburgh Terminal*, 831 F.2d at 527–28. Unlike *Rittenmeyer*, but similar to *Pittsburgh Terminal*, Hayes and Boone are nonresident officers of a Texas corporation, and Boone is also one of only two directors. In addition, like *Pittsburgh Terminal*, this suit charges misfeasance in the operation of the domestic corporation and injury to the remaining director and shareholder of the corporation, both residents of this state. Finally, the relevant long arm statute is similar to that in *Pittsburgh Terminal*. The Texas long arm statute confers jurisdiction over any nonresident "doing business" in the state, while the West Virginia statute confers jurisdiction over any nonresidents "transacting any business." WEST VIRGINIA CODE § 56–3–33(a)(1) (2008).

The Texas Supreme Court has issued numerous opinions on the scope of personal jurisdiction. It has not, however, offered a bright line test that permits Texas courts to exercise jurisdiction over nonresident directors and officers of domestic corporations. Nor has the Texas legislature indicated in either the long-arm statute or the Business Organization Code that a nonresident consents to jurisdiction when it accepts the position as an officer or director in a domestic corporation. Therefore, while we find the appellees' contacts with this state based upon their roles as corporate officers significant, we

will also analyze their contacts under a traditional minimum contacts test.

### 1. Purposeful Availment

The "touchstone of jurisdictional due process [is] 'purposeful availment.'" *Michiana Easy Livin' Country, Inc. v. Holten,* 168 S.W.3d 777, 785 (Tex. 2005). In *Michiana* the Texas Supreme Court directed the courts to consider three issues in determining whether a defendant has purposefully availed itself of the privilege of conducting business or other activities in Texas. First, the court should consider only the defendant's contacts with the forum, not the actions of a third party. Second, the relevant contacts must be purposeful and not "random, isolated or fortuitous." Third, the "defendant must seek some benefit, advantage or profit by 'availing' itself of the jurisdiction." *Id.; see also Moki Mac River Expeditions v. Drugg,* 221 S.W.3d 569, 575 (Tex.2009).

In *Michiana* the court addressed the narrow issue whether an out of state seller could be hailed into a Texas court for an alleged misrepresentation made during a single telephone call initiated by a Texas resident. The court in *Michiana* relied heavily on *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) a case involving a long term contractual relationship between residents of different states that is more analogous to this case. *Burger King* involved a breach of a franchise agreement entered into between a Michigan resident and Burger King, headquartered in Florida. The Court found that Florida had jurisdiction over the Michigan resident based upon the parties long term contractual relationship that involved negotiations and course of dealing between both states. It noted:

> It is these factors, prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing, that must be evaluated in determining whether the defendant purposefully established minimum contacts with the forum.

*Id.,* 471 U.S. at 479, 105 S.Ct. 2174.

With these guidelines in mind, we turn to the first factor whether Hayes' and Boone's contacts with Texas were the result of "unilateral activity of another person." *Michiana,* 168 S.W.3d at 785. Hayes and Boone have had ongoing contacts with Texas residents since they initially agreed to form CoreTex Partnership. Prior to incorporating CoreTex, Hayes and Boone, through CoreTex Partnership, agreed to establish a business with a Texas resident. They later agreed to incorporate that business under the laws of the State of Texas. The parties disputed where the pre-incorporation meeting took place. However, we do not find the location of that meeting dispositive to our analysis. Hayes and Boone participated in the decision to organize a Texas corporation and accepted roles as officers and director of that corporation. They also agreed that a Texas resident would be the President and that he would conduct his share of the business from Texas. Although there is a factual dispute over why Texas was chosen as the state of incorporation, the fact remains that Bierman, Hayes and Boone had a choice of where to incorporate and they chose Texas. Finally, Hayes and Boone traveled to Texas on two occasions to discuss what Bierman wanted to do with the business. Based upon this record we conclude that Hayes' and Boone's contacts with Texas were not the result of conduct by another person, but were a direct result of their voluntary decisions and actions.

The second *Michiana* factor requires us to analyze whether the defendants' contacts were "purposeful" rather

than "random, isolated or fortuitous." *Id.* Again, we consider the facts cited above that Hayes and Boone agreed to form an ongoing business relationship with Texas residents, form a Texas corporation and act as officers and director of that corporation. They also agreed at the outset that each would conduct operations from their homes; for Bierman that meant he would operate from his home in Plano, Texas. This required Hayes and Boone to have ongoing communications with Texas and its residents as long as their business relationship continued. The evidence is undisputed that CoreTex is headquartered in and conducts most of its operations from California. It is also undisputed that there has always been some business conducted in Texas. The domain for CoreTex Products was established in and shown as Plano, Texas. Boone had a role in either hiring Bierman's son or working with his son to develop the website for CoreTex Products. Trademark registrations also utilize the Plano, Texas address. CoreTex has always had some suppliers and customers in Texas. Finally, Hayes and Boone attended at least two meetings related to the ongoing business relationship between the parties in Texas. All of these events could hardly be described as "fortuitous." As the Texas Supreme Court noted in *Michiana* and *Moki Mac* the contacts of "[s]ellers who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are purposeful rather than fortuitous." *Moki Mac,* 221 S.W.3d at 578, (quoting *Michiana,* 168 S.W.3d at 785).

The remaining factor requires the defendants to seek some benefit, advantage or profit by 'availing' itself of the state. In this case, Hayes and Boone clearly sought to profit from their ongoing business relationship with Bierman through formation of a Texas corporation. All of these facts lead us to conclude that Hayes and Boone purposefully availed themselves of the privilege of conducting business in Texas. *See also Lewis v. Indian Springs Land Corp.,* 175 S.W.3d 906 (Tex.App.-Dallas 2005, no pet.) (a Florida resident was subject to jurisdiction in Texas based upon his position as a founder, shareholder and owner of companies organized under Texas law; he executed a promissory note payable in Dallas, Texas and governed by Texas law; and the ongoing business relationship required him to communicate with Texas business associates.)

Appellees argue that all of those contacts with Texas and Bierman, as more fully described above, were as either representatives of CoreLinks, or officers and directors of CoreTex. They also testified that when they met with Bierman in Texas to discuss what Bierman wanted to do with the business that it was as representatives of CoreTex. They argue that they cannot be subject to personal jurisdiction in a Texas court when all of their activities related to Texas were in a representative capacity. This argument, however, confuses application of the fiduciary shield doctrine. The fiduciary shield doctrine protects officers and employees of a corporation from being subject to the jurisdiction in this state when all of the individual's contacts with this state are on behalf of the corporation. *Wolf v. Summers–Wood, L.P.,* 214 S.W.3d 783, 790 (Tex.App.-Dallas 2007, no pet.). The fiduciary shield doctrine has been limited by Texas courts to the exercise of general jurisdiction, it does not shield an officer or employee for their actions that are tortious or fraudulent. *See, SITQ E.U., Inc. v. Reata Restaurants, Inc.,* 111 S.W.3d 638, 650–51 (Tex.App.-Fort Worth 2003, pet. denied) (nonresident officer of a foreign corporation subject to personal jurisdiction where the officer participated in the decision to terminate tenants' leases

while directing others to assure tenants that building would be rebuilt); *D.H. Blair Investment Banking Corp. v. Reardon,* 97 S.W.3d 269 (Tex.App.-Houston [14th Dist.] 2002, pet. dism'd w.o.j.) (nonresident officers of a corporation subject to jurisdiction in Texas in a suit by shareholders of that corporation for fraud, negligent misrepresentation, breach of fiduciary duty and conspiracy); *Smith v. Lanier,* 998 S.W.2d 324, 334–35 (Tex.App.-Austin 1999, pet. denied) ("[a]n agency relationship does not shield an individual from jurisdictional contacts with a state. . . ."); *Ennis,* 164 S.W.3d at 708 (plaintiff need not prove that the defendant committed intentionally tortious acts, a corporate officer is subject to jurisdiction if he or she committed any tortious act for which he is liable individually).

■■■ Appellants alleged in their original pleading that the appellees directed a number of tortious activities toward Texas, including that they usurped CoreTex for their own personal benefit, used their positions as officers of CoreTex to take control of CoreTex, breached a fiduciary duty to CoreTex and its shareholders and that they made misrepresentations to Bierman during the course and scope of their positions as officers of CoreTex. "Courts recognize that a corporate officer is not protected from the exercise of specific jurisdiction, even if all of his contacts were performed in a corporate capacity, if the officer engaged in tortious or fraudulent conduct, directed at the forum state, for which he may be held personally liable." *Ennis,* 164 S.W.3d at 707. Therefore, we conclude that the fiduciary shield doctrine is not available to shield Hayes and Boone from liability or jurisdiction in their personal capacity.

*2. Arise From or Related to*

■■■ We now turn to the final requirement to establish specific jurisdiction-

the litigation must arise from or be related to those contacts. This requires that there "be a substantial connection between those contacts and the operative facts of the litigation." *Moki Mac,* 221 S.W.3d at 585. All of appellees contact with Texas relate to their business relationship with appellants. The underlying litigation concerns whether one of the parties has breached an agreement or a fiduciary duty arising from that business relationship. Therefore, we have no difficulty concluding that the litigation in this case arises from the appellees' contacts with the forum.

The remaining cases cited by appellees in support of their contention that they did not have sufficient minimum contacts with Texas to create personal jurisdiction are inapposite. None of those cases involved a controversy concerning the internal management of a Texas corporation, by officers of that domestic corporation. *Michiana* involved a suit by a purchaser of an RV against an out of state distributor of the RV. The only contact between the Texas and the foreign distributor was a single phone call initiated by the Texas resident. In *Commonwealth Gen. Corp. v. York,* 177 S.W.3d 923 (Tex.2005) the court held that it did not have jurisdiction over a foreign corporation that was the sole shareholder of corporation headquartered in Texas. Although employees of the foreign corporation traveled to Texas for meetings related to corporate business, none of those activities related to the plaintiffs' complaint that benefits had been wrongfully denied under an insurance policy issued by the subsidiary headquartered in Texas. In *Nichols v. Lin,* 282 S.W.3d 743 (Tex.App.-Dallas 2009, no pet.), this court considered only general jurisdiction and did not reach the specific jurisdiction analysis.

The evidence established that Hayes and Boone had numerous contacts with Texas and its residents. They agreed to partner with and establish a business with a Texas resident. They agreed to form a Texas corporation and accepted roles as officers and director of that corporation. When problems arose in that business relationship, they traveled to Texas on two occasions to attempt to resolve those issues. They allegedly made false misrepresentations to Bierman, who at all times resided in Texas, and allegedly breached a fiduciary duty owed to the remaining shareholders of CoreTex who are residents of Texas. Now Bierman and TexVa are asking a Texas court to resolve those disputes and management and control of CoreTex. Even if Hayes and Boone were acting in their corporate capacity when they performed these actions, they can be held personally liable for those tortious acts and subject to jurisdiction in Texas.

## D. *Traditional Notions of Fair Play and Substantial Justice*

 Once we have concluded that the minimum contacts requirement is met, we must still consider whether the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice. We consider the following five factors in making that decision: "(i) the burden on the nonresident defendant; (ii) the forum state's interest in adjudicating the dispute; (iii) the plaintiff's interest in obtaining convenient and effective relief; (iv) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (v) the shared interest of several states in furthering substantive social policies." *Wolf,* 214 S.W.3d at 789. "Only in rare cases, however, will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully estab-lished minimum contacts with the forum state." *Id.*

 The fact that the appellees reside and work in California and it would be burdensome to litigate in Texas does not offend traditional notions of fair play and substantial justice. In multi state disputes, someone will always be inconvenienced. Accordingly, this argument has frequently been rejected as a basis for denying personal jurisdiction. *Burger King,* 471 U.S. at 477, 105 S.Ct. 2174. Moreover, as we noted in *Rittenmeyer,* Texas has "a strong, even compelling interest in providing a forum for redressing harm done by corporate fiduciaries, harm endured principally by a resident of that State." *Rittenmeyer,* 104 S.W.3d at 732. In this case Texas has an even stronger interest in redressing the alleged wrong done by the corporate fiduciaries, not only is the corporation a domestic corporation, but 50% of the shares of the corporation are owned by a Texas resident and some of the corporation's business is conducted in Texas. Therefore, we conclude that the exercise of jurisdiction over appellees does not offend traditional notions of fair play and substantial justice.

## CONCLUSION

The appellees had the burden to negate all jurisdictional bases at the special appearance hearing. *BMC Software,* 83 S.W.3d at 793. We conclude that the evidence admitted at the hearing conclusively established the existence of specific jurisdiction. Therefore, the trial court's ruling was against the overwhelming weight and preponderance of the evidence. For all the foregoing reasons, we conclude that appellees have failed to carry their burden of negating all bases for the exercise of personal jurisdiction by a Texas court and reverse the trial court's order granting the

appellees' special appearance and remand this case for further proceedings.