COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS





ZINC NACIONAL, S.A.,

                                    Appellant,

v.

BOUCHÉ TRUCKING, INC.,

                                    Appellee,

v. 

JORGE ARRELLANO,

                        Party In Interest/Plaintiff.

 §

§
 
§
 
§
 
§
 
§

§

§

§



No. 08-07-00314-CV

Appeal from
 34th District Court

of El Paso County, Texas

(TC # 2001-4505)



 

 

 




OPINION ON REMAND

            Zinc Nacional, S.A. brings this interlocutory appeal from the denial of a special appearance. 
At issue is whether a Mexican company that trucks its product into the United States at Laredo,
Texas for transport to New Mexico may be sued in Texas for negligence in loading the trailer at its
facility in Monterrey, Mexico which allegedly caused an accident that injured a Texas driver. In our
original opinion issued July 31, 2009, we concluded that the trial court could exercise personal
jurisdiction on the basis of specific jurisdiction. On April 9, 2010, the Texas Supreme Court
determined that Zinc did not have minimum contacts with Texas for purposes of establishing specific
jurisdiction by using a third-party trucking service to transport its goods through Texas to an out of
state customer. Zinc Nacional, S.A. v. Bouché Trucking, Inc., 308 S.W.3d 395, 396 (Tex. 2010). 
It remanded the case to us for consideration of Bouché’s alternative jurisdictional argument.
FACTUAL SUMMARY
            For the benefit of the reader, we will reiterate the precise factual background. Zinc Nacional
is a Mexican corporation with its principal place of business in Monterrey, Mexico. The company
manufactures paper and paper-related products for worldwide distribution. It does not maintain an
office in Texas, employ anyone in Texas, advertise in Texas, or market its products in Texas. Zinc
has some 260 customers worldwide, thirty of which are located in the United States, and three or
four of which are located in Texas. It also receives raw materials from suppliers in Texas. Zinc
contracts with C.H. Robinson de Mexico, a Mexican entity, for the transportation of its products
throughout Mexico.
            Zinc focuses on selling its products to drywall manufacturing plants located in New Mexico,
Nevada, and Florida. American Gypsum, located in Albuquerque, New Mexico, has been a customer
of Zinc’s grey-back paper products for the past seven years. Zinc ships American Gypsum
approximately 300 metric tons of product per month. On average, it ships two to three loads a week. 
            On December 13, 1999, Zinc loaded eight rolls of grey-back paper onto a trailer in
Monterrey, Mexico, pursuant to a purchase order from American Gypsum.


 The trailer was provided
by C.H. Robinson. C.H. Robinson trucked the load from Monterrey, Mexico, to the international
bridge at Laredo, Texas. At that point, the customary procedure was to deliver the load to a customs
agent in order to cross the shipment into the United States. In this case, the customs agent was Juan
Alvarado Brokerage. The purchase order specified that the shipping terms were “F.O.B. Mid-Bridge
Laredo.” This ensures, in effect, that the transfer of title took place in Nuevo Laredo, Tamaulipas,
Mexico. The shipment was then picked up in Laredo by Bouché Trucking, Inc.--a Texas
corporation--which had been subcontracted by C.H. Robinson to transport the products to New
Mexico.
            Jorge Arrellano is a long haul truck driver for Bouché. On December 14, 1999, Arrellano
was instructed to pick up a load containing numerous rolls of grey-back paper for transport to
American Gypsum in Albuquerque. During transport, the rolls shifted causing the trailer rig to
overturn in Texas on U.S. 55 North. Arrellano sued Bouché, alleging it was negligent in: (1) failing
to properly load the rolls of paper onto the trailer, (2) failing to properly secure the rolls of paper onto
the trailer, and (3) failing to properly hire and/or train its personnel and/or its agents on the proper
manner of loading. Bouché then filed a third party petition against Zinc Nacional seeking indemnity
and contribution since Zinc employees actually loaded the paper rolls onto the trailer.


 Zinc filed
a special appearance which the trial court denied. 
STANDARD OF REVIEW
            The plaintiff bears the initial burden of pleading sufficient allegations to bring a non-resident
defendant within the personal jurisdiction of a Texas court. Retamco Operating, Inc. v. Republic
Drilling Co., 278 S.W.3d 333 (Tex. 2009); BMC Software Belgium, N.V. v. Marchand, 83 S.W.3d
789, 793 (Tex.2002). The non-resident defendant then assumes the burden of negating all bases of
jurisdiction in those allegations. Id.
            Whether a trial court has personal jurisdiction over a defendant is a question of law, which
we review de novo. Retamco, 278 S.W.3d at 337. However, the trial court frequently must resolve
questions of fact before deciding the question of jurisdiction. BMC Software, 83 S.W.3d 794. If a
trial court enters an order denying a special appearance, and the trial court issues findings of fact and
conclusions of law, the appellant may challenge the fact findings on legal and factual sufficiency
grounds. Id. Where, as here, the trial court does not issue findings, all fact findings necessary to
support the judgment and supported by the evidence are implied. Id. at 795.
LONG-ARM JURISDICTION
            Texas courts may assert in personam jurisdiction over a non-resident if (1) the Texas long-arm statute


 authorizes the jurisdiction, and (2) the exercise of jurisdiction is consistent with federal
and state constitutional due process guarantees. Retamco, 278 S.W.3d at 337, citing Moki Mac River
Expeditions v. Drugg, 221 S.W.3d 569, 574 (Tex. 2007); Schlobohm v. Schapiro, 784 S.W.2d 355,
356 (Tex. 1990). The long-arm statute permits Texas courts to exercise jurisdiction over non-resident defendants that do business in Texas, and the statute contains a non-exclusive list of
activities that constitute “doing business”. Tex.Civ.Prac.&Rem.Code Ann. § 17.042 (Vernon
2008). A non-resident does business in Texas if it commits a tort in whole or in part in the state. 
Tex.Civ.Prac.&Rem.Code Ann. § 17.042(2). A tort is committed where the resulting injury
occurs. Hupp v. Siroflex of America, Inc., 848 F.Supp. 744 (S.D.Tex. 1994), citing Union Carbide
Corp. v. UGI Corp., 731 F.2d 1186, 1189-90 (5th Cir. 1984).
            Section 17.042’s broad language extends personal jurisdiction “as far as the federal
constitutional requirements of due process will permit.” BMC Software, 83 S.W.3d at 795, quoting
U-Anchor Adver., Inc. v. Burt, 553 S.W.2d 760, 762 (Tex. 1977). Consequently, we consider
whether it is consistent with federal constitutional requirements of due process for Texas courts to
assert in personam jurisdiction. See Guardian Royal Exchange Assurance, Ltd. v. English China
Clays, 815 S.W.2d 223, 226 (Tex. 1991). We rely on both federal and Texas decisions in
determining whether a non-resident defendant has met its burden to negate all bases of jurisdiction. 
BMC Software, 83 S.W.3d at 795.
MINIMUM CONTACTS
            The United States Supreme Court divides the due process requirement into two parts: (1)
whether the non-resident defendant has purposefully established minimum contacts with the forum
state, and if so, (2) whether the exercise of jurisdiction comports with traditional notions of fair play
and substantial justice. BMC Software, 83 S.W.3d at 795, citing International Shoe Co. v.
Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed 95 (1945). We focus on the defendant’s
activities and expectations when deciding whether it is proper to bring the defendant before a Texas
court. Retamco, 278 S.W.3d at 338. A defendant establishes minimum contacts when it
“purposefully avails itself of the privilege of conducting activities within the forum state, thus
invoking the benefits and protections of its laws.” Id. Personal jurisdiction exists if the non-resident’s minimum contacts give rise to either specific jurisdiction or general jurisdiction. Id.; BMC
Software, 83 S.W.3d at 795-96, citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S.
408, 413-14, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). Inasmuch as the Supreme Court has already
determined that the trial court erred by exercising specific jurisdiction over Zinc, we limit our
analysis to general jurisdiction. General jurisdiction exists when a defendant’s contacts in a forum
are continuous and systematic so that the forum may exercise personal jurisdiction over the
defendant even if the cause of action did not arise from or relate to activities conducted within the
forum state. BMC Software, 83 S.W.3d at 796.
The Issue on Remand
Here, there is no evidence that Zinc has attempted to serve the market in Texas. It
has no offices, employees, agents, or representatives in Texas, nor does it advertise
or market its paper products here. As such, Zinc lacks the minimum contacts with
Texas necessary to establish specific jurisdiction. Although Zinc does have three or
four customers for its other products in Texas, and does receive some raw materials
from Texas, these facts are unrelated to the accident in this case and are thus
irrelevant to the question of specific jurisdiction. However, they may have some
bearing on the existence of general jurisdiction, an issue the court of appeals did not
consider. 

Zinc, 308 S.W.3d at 398.
The Record
            At the special appearance hearing in the trial court, the parties stipulated that the only
evidence to be considered was the affidavit and deposition of Eduardo Alverde Villareal, Zinc’s
general manager, and the exhibits thereto. The following specifics appear in the affidavit.
3. ZINC is not a Texas resident, does not maintain an office in the State of Texas,
nor does it employ any person in the State of Texas. ZINC does not advertise or
market its products in the State of Texas.
 
4. ZINC is a manufacturer of paper and ZINC related products with its
manufacturing plant located in Monterrey, Mexico. ZINC sells its products to
distributors worldwide. ZINC’s customer base totals approximately 260 customers
worldwide. Of those 260 customers, approximately 30 are located in the United
States. ZINC does sell to three or four customers located in Texas. However, Zinc’s
practice is to transfer title in Mexico. Moreover, neither I, nor anyone who works for
Zinc has personal knowledge that any of the customers are Texas residents as defined
by Texas law. Zinc does receive some raw materials from suppliers in Texas. 
However, the practice of Zinc is to accept title to the materials in Mexico. Zinc only
receives a small amount of its raw materials from suppliers in Texas. Neither I, nor
anyone who works for Zinc has any personal knowledge as to whether any of the
suppliers are Texas residents as defined by Texas law.
 
5. . . . To my knowledge, ZINC does not enter into any contracts with Texas trucking
companies. In short, ZINC does not maintain continuous and systematic contacts
with the State of Texas. 

During his deposition, Alverde testified that: 

            • Zinc is not licensed to do business anywhere in the United States. 

            • Zinc has never filed a claim or action against any company or entity in the United States. 
 
• Zinc has never owned any real estate, personal property, or tangible property in the United
States. 
 
• Zinc only pays for shipments to be delivered to Nuevo Laredo, Mexico or mid-bridge. 

            • Zinc only does business in Mexico. 
 
• The customer pays for the shipment from Nuevo Laredo to “their final destiny” [sic]; hires
the trucking services, and negotiates the price. 

In its response to the special appearance, in its arguments at the hearing, and in its briefing on appeal,
Bouché has consistently based its general jurisdiction argument on these limited facts:
 
• Zinc Nacional (‘Zinc’) has been doing business with customers in the United States
for nine to ten years. Mr. Villareal


 and his managers and staff visit a customer in the
United States one to two times per month and stay two to three days during each
visit.
 
• Zinc has been selling products in the United States since the 1970’s.
 
• Zinc’s markets in the United States are New Mexico, primarily, Nevada and
Florida.
 
• Zinc takes orders and receives all orders from the United States in Monterey [sic],
Mexico.
 
• Zinc has customers around the United States and representatives of Zinc visit their
Customers, they deliver product specifications [sic].
 
• Zinc has a website and its customers or prospective customers can log onto their
website to look at product specifications. The Zinc website is available in the United
States.
 
• However orders are not taken through the website. Orders must be placed by faxing
purchase orders to Zinc’s headquarters in Monterey [sic], Mexico.
 
• One of the products produced by Zinc Nacional is gray back paper and it has been
producing this product for approximately seven years.
 
• Zinc has only three customers for the gray back paper, one in New Mexico (two
different sites in New Mexico), two cites [sic] in Mexico.
 
• American Gypsum (‘AG’) is a New Mexico company and has been a customer of
Zinc since Zinc was started. AG is Zinc’s second biggest customer.
 
• The monthly average shipment for AG for the seven years that AG has been doing
business with Zinc is fifty (50) tons per month. However, the quantity of Zinc gray
paper product ordered by AG is closer to three hundred (300) tons per month and the
price per ton is around $300 per ton.
 
• Zinc sells both types of its gray back paper to AG.
 
• Zinc agents communicate regularly, one or two times per week, with AG
representatives in New Mexico with the communications involving payments and
shipments of products from Monterey [sic], Mexico to New Mexico, one of AG’s
two sites in New Mexico.
 
• Mr. Villareal confirmed that the documents attached hereto as Exhibit B are true
and accurate depictions of the Zinc website. The documents attached hereto as
Exhibit B are incorporated herein by reference for all purposes as if recited verbatim
herein.
 
• Zinc formed ‘Promax’ with other Mexican companies and Promax sells its products
to foreign markets.
 
• Zinc is a member of the American Zinc Association. The American Zinc
Association has its headquarters in Washington, D.C. Zinc has been a member of the
American Zinc Association for at least three years.
 
• Zinc has had the referenced website available since the year 2000.
 
• The documents attached as Exhibit B accurately reflect the Zinc website as it was
previously and as confirmed by Mr. Villareal.
 
• Zinc ships all of its paper products in rolls and the size and dimensions of the rolls
of paper are based upon the specifications provided to Zinc by its customers.
 
• The approximate weight for each roll of paper ordered and shipped from Zinc’s
Monterey [sic], Mexico plant is three metric tons and have always been between 2.5
and 3 metric tons.
 
• Specialized forklifts are used to load the paper rolls onto trailers at the Zinc plant
in Monterey [sic], Mexico.
 
• Zinc typically exchanges with AG purchase orders, invoices and packing lists. Zinc
also receives wire transfers directly from AG.
 
• A representative of Zinc travels to New Mexico to meet with AG every three to six
months.
 
• Zinc built the plant in Monterey [sic], Mexico due substantially to and dependent
upon the gray back paper needs of AG in New Mexico. 

Not a single one of these fact-specific recitations mentions contact with the State of Texas. 
Do These Facts Demonstrate Continuous and Systematic Contact?
            The Texas Supreme Court has recognized that general jurisdiction requires a more
demanding minimum contacts analysis. Spir Star AG v. Kimich, 310 S.W.3d 868 (Tex. 2010), 53
Tex.Sup.Ct.J. 423. Indeed, the contacts must be “substantial”. CSR, Ltd. v. Link, 925 S.W.2d 591,
595 (Tex. 1996). We have considerable detailed evidence about the accident at issue and Zinc’s
purported negligence in loading the rolls of grey back paper at its manufacturing facility in
Monterrey. We know that Zinc contracted with C.H. Robinson de Mexico, a Mexican company, to
truck the paper to the border. Alverde testified that the purchaser, American Gypsum, was
responsible for arranging transportation from the border to its facilities in New Mexico. And Bouché
Trucking, a Texas company, was employed for that purpose. 
            As we noted above, the Supreme Court recognized that Zinc does have three or four
customers for its other products in Texas, and receives some raw materials from Texas. While
irrelevant to the question of specific jurisdiction, the court opined that it might be relevant to a
general jurisdiction argument. We would agree had we been presented with evidence concerning
these contacts. Alverde averred in his affidavit only that Zinc’s practice with both customers and
suppliers is to transfer title in Mexico, and Zinc only receives a small amount of its raw materials
from suppliers in Texas. We have not been advised of the identity or location of the customers, the
products which are sold to those customers, the identity or location of the suppliers of raw materials,
the nature of the raw materials, the type of interaction Zinc has with the Texas entities, or the
frequency of those contacts. Are these contacts sufficient? We think not.
            General jurisdiction is often described as “dispute blind”, an exercise of jurisdiction made
without regard to the nature of the claim presented. Moki Mac River Expeditions v. Drugg, 270
S.W.3d 799, 802 (Tex.App.--Dallas 2008, no pet.)(on remand). Only the defendant’s contacts with
the forum are relevant, not the unilateral activity of another party or third person. Retamco, 278
S.W.3d at 339. It is the quality and nature of the defendant’s contacts with the forum state rather
than their number. Id. All of the contacts must be carefully investigated and analyzed for proof of
a pattern of continuing and systematic activity and we are to apply these factors to all of the
nonresident defendant’s contacts with Texas. Schlobohn, 784 S.W.2d at 359. Usually, the
nonresident defendant must be engaged in longstanding business in the forum state, such as
marketing, shipping products, performing services, or maintaining offices. Assurances Générales
Banque Nationale v. Dhalla, 282 S.W.3d 688, 697 (Tex.App.--Dallas 2009, no pet.), citing PHC-Minden, L.P. v Kimberly-Clark Corp., 235 S.W.3d 163, 168 (Tex. 2007). But placing a product into
the stream of commerce with an awareness that the property may end up on Texas is insufficient to
support general jurisdiction. Spir Star AG, 310 S.W.3d at 874.
            Because the primary focus of the parties in the trial court was specific jurisdiction, the
circumstances of other business relationships have not been fleshed out in the record. Who
contacted whom? Merely contracting with a Texas resident does not satisfy the minimum contacts
requirement. Internet Advertising Group, Inc. v. Accudata, Inc., 301 S.W.3d 383, 389 (Tex.App.--Dallas 2009, no pet.), citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 478, 105 S.Ct. 2174,
85 L.Ed.2d 528 (1985). The facts must indicate the Zinc intended to serve the Texas market. 
Assurances Générales Banque Nationale, 282 S.W.3d at 700. Bouché also had the burden to
demonstrate that Zinc sought some benefit, advantage, or profit by availing itself of the state’s
jurisdiction. Id. While we do not know the circumstances of these other business arrangements, 
we can ascertain that there has been no litigation in Texas involving these relationships. Zinc has
no assets, property, or bank accounts in Texas. Moki Mac, 270 S.W.3d at 803. 
            We must thus conclude that Zinc had contacts with Texas but none sufficient to support
general jurisdiction. Id., citing PHC-Minden Inc., 235 S.W.3d at 171. Having found no general
jurisdiction, we need not consider whether the exercise of jurisdiction comports with traditional
notions of fair play and substantial justice. We reverse the trial court’s order denying Zinc’s special
appearance and render judgment dismissing the case against Zinc for want of personal jurisdiction.
 
December 15, 2010                                                     
                                                                                    ANN CRAWFORD McCLURE, Justice
Before Chew, C.J., McClure, and Rivera, JJ.
Rivera, J., not participating