Opinion issued April 8, 2010.

 

 

 



 

In The

Court
of Appeals

For The

First
District of Texas

————————————

NO. 01-09-00403-CV

———————————

Paul Touradji, Appellant

V.

Beach
Capital Partnership, L.P., Playa Oil & Gas GP, LLC, Playa Oil & Gas,
LP, and Gary M. Beach, Appellees



 



 

On Appeal from the 55th Judicial District Court

Harris County, Texas



Trial Court Case No. 2008-57962

 



 

 

 

O P I N I O N

          In this
interlocutory appeal, appellant, Paul Touradji, appeals the trial court’s order
denying his special appearance.[1]  Appellees, Beach Capital Partnership, L.P.,
Playa Oil & Gas GP, LLC, Playa Oil & Gas, LP, and Gary M. Beach
(collectively, “plaintiffs”) sued Touradji, a New York resident, and Touradji’s
business DeepRock Venture Partners, LP, alleging claims for interference with
contract and economic relations, fraud, breach of fiduciary duty, slander and
libel, and intentional infliction of emotional distress.  Touradji filed a special appearance that the
trial court denied.  In two issues, Touradji
contends the trial court erred by denying his special appearance because he is
not subject to either specific or general jurisdiction in Texas.  We conclude that Touradji is not subject to
general jurisdiction in Texas but that he is subject to specific jurisdiction
for some of the claims against him.  More
specifically, Touradji established minimum contacts with Texas and the claims
for interference with contract, fraud, and breach of fiduciary duty
sufficiently relate to those contacts to subject Touradji to personal
jurisdiction in Texas.  We also conclude plaintiffs
failed to plead sufficient jurisdictional allegations concerning the claims for
slander and libel and for intentional infliction of emotional distress to
subject Touradji to personal jurisdiction in Texas.  We affirm in part, reverse in part and remand
this case to the trial court. 

Background

          This case involves a dispute over
ownership of Playa Oil & Gas, LP, a Texas limited partnership, as well as
control of its ongoing operations.

          A.      Overview of Entities Involved

          Playa Oil & Gas, LP (“Playa LP”)
is a Texas limited partnership with its principal place of business in Houston,
Texas.  Playa LP was established in 2005
by Gary M. Beach, a Texas resident, and Paul Touradji, a New York resident,
through other entities as described below. 
The partners of Playa LP are its general partner, Playa Oil & Gas
GP, LLC (“Playa GP”), and its limited partners, Beach Capital Partnership, L.P.
(“Beach Capital”) and DeepRock Venture Partners, LP (“DeepRock”).  Playa GP owns 0.1% of Playa LP, while Beach
Capital owns 19.9% and DeepRock owns 80%.

          Playa GP is a Texas limited liability
company with its principal place of business in Houston, Texas.  Playa GP, as the general partner of Playa LP,
operates Playa LP and manages its business affairs.  Playa GP is run by four managers, one
appointed by Beach and the remaining three by DeepRock.  Touradji is a manager of Playa GP and, prior
to this controversy, Beach was a manager and the CEO.  Playa GP is wholly owned by Beach.

          Beach Capital is a Texas limited
partnership.  Its principal place of
business is Houston, Texas.  Beach owns
100% of Beach Capital.

          DeepRock is a Delaware limited
partnership with its principal place of business in New York.  Touradji indirectly owns 100% of
DeepRock.  DeepRock was created for the
purpose of becoming a partner in Playa LP, for Touradji to manage his
investment in Playa LP. 

          B.
     The Controversy

          In 2008, after Playa LP had been
operating almost three years, Touradji and DeepRock sought to restructure the parties’
relationship.  Touradji and DeepRock
declined to make any further investment in Playa LP unless DeepRock received
100% of Playa LP’s revenues until DeepRock’s entire investment had been
recovered.  In May 2008, Beach and Beach
Capital executed an “Amended and Restated Agreement of Limited
Partnership.”  Touradji and DeepRock did
not execute the agreement.  Touradji and
DeepRock also did not make any further investment in Playa LP.

          Touradji, as one of the managers of
Playa GP, authorized the sale of Playa LP assets, specifically, real property
in East Texas, for approximately $41 million. 
Touradji also authorized the distribution of the $41 million in proceeds
to DeepRock, but no distribution was made to the other limited partner, Beach
Capital.  By the terms of the partnership
agreement, approximately $8.2 million of the proceeds should have been
distributed to Beach Capital.

          On September 26, 2008, Beach learned that
the “Amended and Restated Agreement of Limited Partnership” had not been
executed by Touradji or DeepRock.  Beach
and Beach Capital withdrew their consent to the amended agreement.  

          Plaintiffs filed this suit on October
1, 2008. A few days later, Touradji, acting on behalf of DeepRock, approved the
“Amended and Restated Agreement of Limited Partnership” of Playa LP and
appointed new managers of Playa GP, including re-appointing himself as
manager.  On October 10, 2008 Touradji,
acting for DeepRock, sent a letter to plaintiffs in Texas notifying plaintiffs
that he had appointed new managers and accepted new regulations for Playa
GP.  

          On October 15, Touradji and the
managers he had appointed removed Beach from control of the partnership,
stripping him of his status as a manager and CEO. From the time of the October
meeting, plaintiffs contend that Touradji and DeepRock have refused to
cooperate in the operations of the partnership and “continued in their breaches
of their duties to plaintiffs,” including preventing plaintiffs from receiving
their fair share of revenue and destroying the remaining value of the
partnership.

 

          C.      Special Appearance in the Trial Court 

          Touradji filed a special appearance asserting
he is not subject to personal jurisdiction in Texas.  Specifically, in his special appearance
Touradji contends that he is not subject to specific jurisdiction in Texas
because plaintiffs failed to plead sufficient jurisdictional allegations and he
did not purposefully avail himself of the privilege of conducting business in
Texas.  Touradji also asserts his
contacts with Texas are not extensive enough to subject him to general
jurisdiction.  In support of his special
appearance, Touradji filed an affidavit in which he avers he is not a Texas
resident, does not maintain a place of business in Texas, and does not own real
property in Texas.  Touradji also states
he either made or received approximately 10 telephone calls with people in Texas
and visited Texas approximately five times concerning the business of Playa
LP.  

Personal Jurisdiction and Special
Appearance

            A.      Standard
of Review

          A legal conclusion concerning the
existence of personal jurisdiction is a question of law subject to de novo review, but that
conclusion must sometimes be preceded by the resolution of underlying factual
disputes.  Am. Type Culture Collection
Inc. v. Coleman, 83 S.W.3d 801, 805–06 (Tex. 2002); BMC Software Belg.,
N.V. v. Marchand, 83 S.W.3d 789, 794 (Tex. 2002).  “When . . . the trial court does
not issue fact findings, we presume that the trial court resolved all factual
disputes in favor of its ruling.”  Glattly
v. CMS Viron Corp., 177 S.W.3d 438, 445 (Tex. App.—Houston [1st
Dist.] 2005, no pet.) (citing Am. Type Culture Collection, 83 S.W.3d at
805–06).  However, “we review de novo if
the underlying facts are undisputed or otherwise established.”  Preussag Aktiengesellschaft v. Coleman,
16 S.W.3d 110, 113 (Tex. App.—Houston [1st Dist.] 2000, pet. dism’d
w.o.j.).  

          B.      Law of Special Appearance

          A plaintiff bears the initial burden
of pleading allegations sufficient to bring a non-resident defendant within the
terms of the Texas long-arm statute.  Kelly
v. Gen. Interior Const., Inc.,
301 S.W.3d 653, 658 (Tex. 2010); Am. Type Culture Collection, 83
S.W.3d at 807.  To establish jurisdiction over a nonresident defendant, the plaintiff
must plead a “connection between the defendant[’s] alleged wrongdoing and the
forum state.”  Kelly, 301 S.W.3d at 655.  In
a tort case, the plaintiff must plead that the defendant committed a tortious
act in Texas.  Id. at 659; Ji-Haw Indus.
Co., Ltd. v. Broquet, No. 04-07-00622-CV, 2008 WL 441822, at *2 (Tex.
App.—San Antonio Feb. 20, 2008, no pet. h.)

          If
the plaintiff pleads sufficient jurisdictional allegations, the nonresident defendant then assumes
the burden of negating all bases of jurisdiction in those allegations.  Kelly, 301 S.W.3d at 658; Moki Mac River Expeditions v. Drugg,
221 S.W.3d 569, 574 (Tex. 2007).  If the
plaintiff does not plead sufficient jurisdictional facts, the defendant meets
its burden to negate jurisdiction by proving it is not a Texas resident.  Kelly,
301 S.W.3d at 658–59.   The plaintiff’s original pleadings as well
as its response to the defendant’s special appearance can be considered in
determining whether the plaintiff satisfied its burden.  Wright v. Sage Eng’g, Inc., 137 S.W.3d
238, 249 n.7 (Tex. App.—Houston [1st Dist.] 2004, pet. denied).  In conducting our review, we accept as true
the allegations                                                      
in the petition.  Pulmosan
Safety Equip. Corp. v. Lamb,
273 S.W.3d 829, 839 (Tex. App.—Houston [14th Dist.] 2008, pet. denied).

          C.      The Law of Personal Jurisdiction

          A court may assert personal jurisdiction over a
non-resident defendant if the requirements of the Due Process Clause of the
United States Constitution[2]
and the Texas long-arm statute[3]
are both satisfied.  Helicopteros
Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414, 104 S. Ct. 1868,
1872 (1984); CSR, Ltd. v. Link, 925 S.W.2d 591, 594 (Tex. 1996).  “Because the Texas long-arm statute reaches
‘as far as the federal constitutional requirements of due process will allow,’
the statute is satisfied if the exercise of personal jurisdiction comports with
federal due process.”  Preussag
Aktiengesellschaft, 16 S.W.3d at 113 (quoting CSR, Ltd., 925 S.W.2d
at 594).  We thus examine only
whether a Texas court’s exercise of jurisdiction over Touradji would comport
with the requirements of federal due process. 
See id.

          To meet the requirements of federal
due process, “the nonresident defendant must have purposefully established such
minimum contacts with the forum state that it could reasonably anticipate being
sued there.”[4]  Id. (citing Burger King Corp. v.
Rudzewicz, 471 U.S. 462, 475, 105 S. Ct. 2174, 2183 (1985)).  “If the nonresident defendant has
purposefully availed itself of the privileges and benefits of conducting
business in a state, it has sufficient contacts to confer personal
jurisdiction.”  Id. (citing Burger
King, 471 U.S. at 475, 105 S. Ct. at 2183). 
“Random, fortuitous, or attenuated contacts do not suffice.”  Id. (citing Burger King, 471
U.S. at 475, 105 S. Ct. at 2183). 

          To assess whether a non-resident
defendant has purposefully availed himself of the privileges and benefits of
conducting business in Texas, we examine three factors.  See Michiana Easy Livin’ Country, Inc. v.
Holten, 168 S.W.3d 777, 785 (Tex. 2005). 
First, only the defendant’s own actions may constitute purposeful
availment; a defendant may not be haled into a jurisdiction based solely on the
unilateral activities of a third party.  Id.
(citing Burger King, 471 U.S. at 475, 105 S. Ct. at 2183).  Second, the defendant’s acts must be
purposeful, and a showing of random, isolated, or fortuitous contacts is
insufficient.  Id. (citing Keeton
v. Hustler Magazine, Inc., 465 U.S. 770, 774, 104 S. Ct. 1473, 1478
(1984)).  Third, a defendant must seek
some benefit, advantage, or profit through his purposeful availment, because
jurisdiction is based on notions of implied consent; that is, by seeking the
benefits and protections of a forum’s laws, a non-resident consents to suit
there.  Id. (citing World-Wide
Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S. Ct. 559, 567
(1980)).  The purposeful availment test
should focus on “the defendant’s efforts to avail itself of the forum” and not
“the form of the action chosen by the plaintiff.”  Moki Mac, 221 S.W.3d at 576.  

          Minimum-contacts analysis is further
divided into specific personal jurisdiction and general jurisdiction.  Preussag Aktiengesellschaft, 16 S.W.3d
at 114.  

                    1.       Specific
Jurisdiction

          A court may exercise specific personal
jurisdiction over a non-resident defendant if (1) the non-resident purposely
directed its activities toward the forum state or purposely availed itself of
the privileges of conducting activities there and (2) the controversy arises
out of or is related to the non-resident’s contacts with the forum state.  Freudensprung v. Offshore Tech. Servs.,
Inc., 379 F.3d 327, 343 (5th Cir. 2004).  
The non-resident defendant’s purposeful conduct, not the unilateral acts
of the plaintiff, must have caused the contact. 
See Helicopteros Nacionales de Colombia, S.A., 466 U.S. at 414,
104 S. Ct. at 1872.  Foreseeability of an
injury in Texas is not solely determinative, Michiana Easy Livin’ Country, 168 S.W.3d at 789, but foreseeability
of causing injury is “an important consideration” in deciding whether a
nonresident defendant has purposefully established minimum contacts.  BMC
Software, 83 S.W.3d at 795.  

          Even if a non-resident has
purposefully availed himself of the benefits of conducting business in Texas,
there is no specific jurisdiction over the non-resident unless the cause of
action “arises from or is related to an activity conducted within the
forum.”  BMC Software, 83 S.W.3d
at 796.  We focus our analysis on the
relationship among the non-resident, the forum, and the litigation to determine
if the alleged liability arises from or is related to an activity conducted in
Texas.  Counter Intelligence, Inc. v.
Calypso Waterjet Sys., Inc., 216 S.W.3d 512, 517 (Tex. App.—Dallas 2007, no
pet. h.).  The focus of the examination
must be the nature of the contacts and the “nexus” that these contacts create
with the forum state.  McDermott v.
Cronin, 31 S.W.3d 617, 621–22 (Tex. App.—Houston [1st Dist.] 2000, no
pet.).  The “arises from or is related
to” requirement of specific personal jurisdiction requires a “substantial
connection” between the non-resident defendant’s contacts and the “operative
facts of the litigation.”  Moki Mac,
221 S.W.3d at 584–85.  That is, the
non-resident’s conduct must have been purposely directed towards or have
occurred in the forum and must have a “substantial connection” with the
litigation’s operative facts.  Id.;
Glattly, 177 S.W.3d at 447.

                   2.       General Jurisdiction

          General jurisdiction does not require
that the cause of action relate directly to the defendant’s contacts with the
forum.  Preussag Aktiengesellschaft,
16 S.W.3d at 114 (citing CSR, Ltd., 925 S.W.2d at 595).  To negate general jurisdiction a defendant
must show that its contacts in Texas were not “continuous and systematic.”  Id. 
To support general jurisdiction, the defendant’s forum activities must
have been “substantial,” which requires stronger evidence of contacts than for
specific jurisdiction.  Id.  The Texas supreme court has described it as a
“more demanding minimum contacts analysis.” 
PHC-Minden, L.P. v. Kimberly-Clark
Corp., 235 S.W.3d 163, 168 (Tex. 2007) (quoting CSR, Ltd. v. Link, 925 S.W.2d at 595).  “Usually, ‘the defendant must be engaged in
longstanding business in the forum state, such as marketing or shipping
products, or performing services or maintaining one or more offices there;
activities that are less extensive than that will not qualify for general in
personam jurisdiction.’”  Id. (quoting 4 Charles Alan Wright & Arthur R. Miller, Federal Practice &
Procedure § 1067.5 (2007)).




 

Analysis

          A.      General Jurisdiction

          In
his first issue, Touradji asserts the trial court erred by denying his special
appearance because he is not subject to general jurisdiction in Texas.  As noted above, general jurisdiction requires
more substantial contacts with Texas than specific jurisdiction.  PHC-Minden,
235 S.W.3d at 168.  Here, the plaintiffs’
petition contains no allegations that Touradji had any longstanding or
substantial business activities in Texas—such as marketing or shipping products
or maintaining an office here.  See id.  
Accordingly, Touradji’s affidavit asserting he is not a Texas resident
is sufficient to negate general jurisdiction as a basis for the trial court’s
exercise of personal jurisdiction.  See Kelly, 301 S.W.3d at 659.  We sustain Touradji’s first issue.

          B.      Specific Jurisdiction

          As a
threshold matter, Touradji asserts we must examine his special appearance
concerning specific jurisdiction on a claim-by-claim basis.  Although the Texas supreme court did not hold
that specific jurisdiction must be analyzed for each specific claim, in Kelly, it analyzed the sufficiency of
the jurisdictional allegations of the plaintiff’s claims separately.  See
Kelly, 301 S.W.3d at 660 (addressing jurisdictional allegations for fraud
claim separately from claim under Texas Property Code).  In addition, the Fifth Circuit has held that
the “arise from or related to” portion of the specific jurisdiction analysis must
be conducted on a claim-by-claim basis to comply with due process when the
claims are based on different forum contacts. 
Seiferth v. Helicopteros Atuneros,
Inc., 472 F.3d 266, 274 (5th Cir. 2006) (citing cases from First, Third,
Eight, and Ninth Circuits); see also
Barnhill v. Automated Shrimp Corp., 222 S.W.3d 756, 767 (Tex. App.—Waco
2007, no pet.) (following Seiferth).  However, when separate claims are based on
the same forum contacts, a separate analysis of each claim is not
required.  See Sutton v. Advanced Aquaculture Sys., Inc., 621 F.Supp.2d 435,
442 (W.D. Tex. 2007) (distinguishing Seiferth
on basis that plaintiff’s claims all arose from same set of forum contacts); see also Davis Invs., VI, LP v. Holtgraves,
No. 14-08-00222-CV, 2009 WL 975961, at *12 n.7 (Tex. App.—Houston [14th
District]  Feb. 26, 2009, pet. denied)
(agreeing “with other courts that generally a specific-jurisdiction analysis
should be performed on a claim-by-claim basis” but declining to do so because
plaintiff’s claims all arose from same facts and defendant asserted single
basis for his special appearance to each claim).  In this case, neither party provides any
argument or analysis concerning whether these claims arise from the same forum
contacts or different ones.  Plaintiffs’ pleadings do not clearly
show that all the claims arise out of the same facts.  Plaintiffs’ live petition contains a
background section making certain allegations, but it also has separate
sections for each cause of action that appear to discuss other allegations, so
it is unclear whether those separate sections are discussing the same
underlying facts for all the claims. We
therefore examine the sufficiency of the jurisdictional allegations of each
claim against Touradji separately in our specific jurisdiction analysis.[5]  See
Kelly, 301 S.W.3d at 659–60.  As
discussed below, we conclude that not all of plaintiffs’ claims—specifically,
the claims for slander and libel and for intentional infliction of emotional
distress—are supported by sufficient jurisdictional allegations.  The remaining claims for interference with
contract and economic relations, fraud, and breach of fiduciary duty are based,
in large part, upon the same contacts with Texas, namely, Touradji’s
involvement with the ongoing operations of a Texas business.  We therefore address the “arise from or
related to” requirement of specific jurisdiction together for these claims.  See
Sutton, 621 F.Supp.2d at 442; see also Davis Invs., VI, LP, 2009 WL
975961 at *12 n.7.

          Within
his issue concerning specific jurisdiction, Touradji asserts three reasons the
trial court erred in denying his special appearance.  First, Touradji asserts that plaintiffs
failed to sufficiently allege jurisdictional facts to support each claim.  Second, Touradji contends that under the
supreme court’s opinion in Michiana,
Touradji has not purposefully availed himself of doing business in Texas.  Third, Touradji asserts that, even if his
contacts were sufficient to support a finding of minimum contacts, his contacts
are not substantially connected to the operative facts of this litigation to
support jurisdiction under Moki Mac.

                   1.       Sufficiency of Allegations

          Plaintiffs
alleged five causes of action against Touradji: (a) interference with contracts
and economic relations; (b) fraud; (c) slander and libel; (d) breach of
fiduciary duty; and (e) intentional infliction of emotional distress.

                             (a) Interference with Contract and
Economic Relations

          Concerning
this cause of action, plaintiffs alleged Touradji and DeepRock communicated with
plaintiffs in Texas.  Plaintiffs also
alleged Touradji executed a “consent” causing Playa GP, as general partner of
Playa LP, to sell Texas properties to raise revenue.  Plaintiffs further alleged Touradji caused
distributions of this revenue to be made to DeepRock, but withheld any
distribution to Beach Capital.  Finally,
plaintiffs alleged that Touradji has taken control of Playa GP and Playa LP and
“failed to cooperate with and otherwise obstructed the operations of Playa LP.”[6]

          Unlike
the allegations in Kelly, here
plaintiffs pleaded that Touradji communicated with them in Texas.  Touradji, acting as a manger for a Texas limited
liability company, allegedly caused a Texas limited partnership to sell Texas
property to raise revenue.  Touradji then
allegedly caused the distribution of those revenues from the Texas entities to
DeepRock, and withheld any distribution to the other limited partner, Beach Capital,
another Texas entity.  We hold these
allegations are sufficient to plead a connection between the alleged wrongful
acts and Texas.  See Pulmosan Safety Equip. Corp., 273 S.W.3d at 839 (holding we
accept allegations as true in reviewing special appearance); see also Retamco Operating, Inc. v. Republic Drilling Co., 278 S.W.3d 333, 340 (Tex. 2009)
(finding personal jurisdiction appropriate where defendant accepted transfer of
Texas real property even though transaction occurred outside of Texas); TexVa,
Inc. v. Boone, 300 S.W.3d
879, 889 (Tex. App.—Dallas 2009, pet. filed) (finding jurisdiction proper over
nonresident defendants who formed partnership with Texas, later incorporated
business under laws of Texas, served as officers and directors of that
corporation, and allegedly breached fiduciary duties to Texas corporation and
Texas shareholder).

                              (b)
Fraud

          Concerning
the allegations of fraud, Touradji asserts the “bare assertions of fraud . . .
, without more, are neither material nor relevant in assessing contacts to
determine personal jurisdiction over a nonresident defendant.”  See Capital
Fin. & Commerce AG v. Sinopec Overseas Oil & Gas, Ltd., 260 S.W.3d
67, 78 (Tex. App.—Houston 2008, no pet.) 
In Kelly, the supreme court
found an allegation of fraud insufficient to invoke personal jurisdiction over
the defendant when it did not mention Texas at all.  Kelly,
301 S.W.3d at 656, 660.  The allegation
in that case stated “the material representations made by [defendant] were
false and were made with the intention that [plaintiff] would rely
thereon.”  Id. at 655.  In contrast, the
allegations in this case are that Touradji made a representation to plaintiffs in
Texas and that the representation concerned the ongoing operation of two Texas
entities.  These allegations specifically
mention Texas, pleading a connection between Touradji’s allegedly wrongful acts
and Texas.  See id. at 655, 660.  We hold
these allegations are sufficient.




 

                             (c) Breach of Fiduciary Duty

          In
his brief to this court, Touradji specifically states that he “does not appeal
the finding of specific jurisdiction over him with respect to the claims of
breach of fiduciary duty, to the extent that such a duty arose by virtue of
Touradji’s position as a Manager of Playa GP.” 
In their petition, the only allegation of fiduciary duties owed by
Touradji made by plaintiffs is that “Touradji, as manager of Playa Oil &
Gas GP, LLC, owes fiduciary duties to Plaintiff Playa Oil & Gas GP, LLC,
and along with DeepRock, owes fiduciary duties to Playa Oil & Gas GP, LLC,
Playa Oil & Gas LP, and Beach Capital Partnership, LP.”  Because Touradji concedes there is
jurisdiction over the breach of fiduciary duty claim on the only basis alleged
by the plaintiffs, we affirm the trial court’s order denying Touradji’s special
appearance with respect to breach of fiduciary duty claim. 

                             (d) Slander and Libel

          Concerning
the slander and libel claims, Touradji asserts that plaintiffs’ “generalized
allegations” of slander and libel, without any pleading that the “supposed
statements were made in Texas or even
to anyone who was located in Texas,”
are insufficient.  (Emphasis in
original).  In the facts section of their
live pleading, plaintiffs alleged, “Paul Touradji has slandered and libeled
Gary M. Beach by disseminating oral and written untrue and injurious
statements, which were intended to be disseminated public[ly], including in
Texas.”  In the causes of action section,
plaintiffs alleged, “Paul Touradji has slandered and libeled Gary M. Beach by
uttering and causing the publication of untruths concerning Mr. Beach, which
statements were injurious to his reputation and standing.”  The only mention of Texas in these allegations
is that the defamatory statements were intended to be made publicly “including
in Texas.”  There is no allegation of any
connection to Texas.  There is no
allegation that the statements were made or disseminated in Texas.  These allegations closely resemble the
allegations of fraud in Kelly that
pleaded no Texas conduct and no connection to Texas.   See
Kelly, 301 S.W.3d at 656, 660.  We hold these allegations are insufficient.

                             (e) Intentional Infliction of
Emotional Distress

          Touradji
asserts the same arguments concerning the allegations of intentional infliction
of emotional distress as he does concerning the allegations of slander and libel.  Plaintiffs alleged, “Paul Touradji has
threatened and slandered the other managers of Playa Oil & Gas GP, LLC . .
. .”  Plaintiffs also pleaded, “Paul Touradji
has, on several occasions, threatened the managers and personnel of Playa Oil
& Gas GP, LLC, with economic and bodily harm, such conduct being so
intentional, extreme, and outrageous as to be utterly intolerable in a
civilized community, causing severe emotional distress, injury and damages to
Plaintiffs.”  Like the allegations in Kelly, these allegations make no mention
of Texas.  These allegations contain no
pleading of a connection between Touradji’s alleged wrongdoing and Texas.  Kelly, 301 S.W.3d at 660.  We hold
these allegations are insufficient. 

          For the remaining analysis, we do not
address the claims of intentional infliction of emotional distress or slander
and libel because we have concluded the plaintiffs did not meet their initial
burden of sufficiently alleging Touradji came within the terms of the Texas
long-arm statute for those claims.  See id. at 659.  Nor do we address the
claim of breach of fiduciary duty because Touradji has not appealed the trial
court’s denial of his special appearance for that claim.  For the remaining claims—interference with
contract and economic relations and fraud—the burden is on Touradji to negate
all bases of jurisdiction alleged by plaintiffs.  See id.;
Moki Mac River Expeditions, 221 S.W.3d at 574.

                   2.       Purposeful Availment

          Within
this portion of his second issue, Touradji contends this case is governed by
the Texas supreme court’s opinion in Michiana.  Touradji asserts we must look to “Texas-based
conduct” and “where the defendant’s actions were carried out.”  Although these are factors that could impact
a personal jurisdiction analysis, the Supreme Court’s holding in Michiana is not so narrow.

                             (a)     Michiana Easy Livin’ Country, Inc. v. Holten

          In Michiana, the Texas supreme court held
that the exercise of personal jurisdiction was not proper over Michiana because
its sole contact with Texas was not the result of actions it directed towards
Texas.  Michiana Easy Livin’ Country, Inc., 168 S.W.3d at 794.  Michiana, an Indiana company, received a
phone call from Holten, a Texas resident. 
Id. at 784.  Holten arranged to buy an RV from Michiana
and to have it shipped to Texas at his own expense.  Id.  During the course of this phone call,
Michiana allegedly made misrepresentations to Holten.  Id.  The supreme court rejected cases that upheld
personal jurisdiction based on whether the defendant “directed a tort” towards
Texas in a single phone call.  Id. at 190–91.  First, the court explained the focus must
remain on the relationship among the defendant, the forum, and the litigation,”
but a “directing a tort” analysis shifts the focus to the relationship among
the plaintiff, the forum, and the litigation. 
Id. at 190.  Second, “directing a tort” analysis
improperly focuses on the merits of the claim; the focus should be on the
defendant’s contacts with Texas, not whether those contacts were tortious.  Id.
at 790–91.  Third, focusing on whether
the defendant directed a tort toward Texas could alter the outcome of
jurisdictional analysis based on whether the plaintiff alleged a tort or a
contract claim based on the same actions. 
Id. at 791.  The supreme court disapproved of intermediate
court holdings that “(1) specific jurisdiction is necessarily established by
allegations or evidence that a nonresident committed a tort in a telephone call
from a Texas number, or that (2) specific jurisdiction turns on whether a
defendant’s contacts were tortious rather than the contacts themselves.”  Id.
at 791–92 (footnotes omitted).

          The supreme court did not hold that
specific jurisdiction turns only on
“Texas-based conduct” and “where the defendant’s actions were carried out,” as
Touradji asserts.  Texas supreme court
decisions since Michiana make this
clear.  In Moki Mac, the supreme court found sufficient minimum contacts over
Moki Mac, an Arizona company.  Moki
Mac River Expeditions, 221 S.W.3d at 579. 
In that case the supreme court noted that a personal jurisdiction
analysis must consider whether a nonresident defendant “purposefully directed
action towards Texas.”  Id. at 577.  Among other activities, Moki Mac regularly
advertised in Texas and solicited business from Texas residents through mass
and targeted direct-marketing email campaigns. 
Id. at 577–78.  In finding sufficient minimum contacts, the
supreme court stated, “Moki Mac’s business with Texas residents stems from its
marketing and advertising activities purposefully directed at gaining Texas
customers, and it thus availed itself of doing business here.”  Id.
at 579.

          The supreme court also found personal
jurisdiction over a California company in Retamco
Operating, Inc. v. Republic Drilling Co., 278 S.W.3d 333 (Tex. 2009).  Retamco, a Texas company, sued Republic
Drilling Company, a California corporation, over Republic receiving oil and gas
wells and leases, allegedly in violation of the Uniform Fraudulent Transfer
Act.  Retamco
Operating, Inc., 278 S.W.3d at 336. 
Republic filed a special appearance, asserting that it did not have
minimum contacts with Texas because the allegedly fraudulent transfer occurred
entirely outside of Texas.  Id. at 336–37.  The supreme court stated that “[j]urisdiction
. . . may not be avoided merely because the defendant did not physically enter
the forum state.”  Id. at 339 (quoting Burger
King, 471 U.S. at 476, 105 S. Ct. at 2184). 
The supreme court noted that Republic knowingly and willingly entered
into the transaction to accept real property in Texas, and that this was
sufficient to constitute purposeful availment of doing business in Texas.  Id.
at 339–40.  Thus, our focus is on
Touradji’s actions that were purposefully directed towards Texas, not solely on
whether he physically performed those actions in Texas.  See
Retamco, 278 S.W.3d at 339; Moki Mac River Expeditions, 221 S.W.3d
at 579.

                             (b)     Touradji’s Contacts

          Here, Touradji formed DeepRock for the
sole purpose of becoming a limited partner in Playa LP, a Texas entity.  The partnership agreement recites the
principal place of business of Playa LP is Houston, Texas.  The agreement also provides, “Applicable Law. This Agreement
and the rights and obligations of the parties hereunder shall be governed by
and interpreted, construed and enforced in accordance with the laws of the
State of Texas without regard to any choice of law principles.”  (Emphasis in original).  Although he signed the partnership agreement
on behalf of DeepRock, the agreement shows Touradji knew he was becoming
involved with a Texas entity, doing business in Texas and subject to the laws
of Texas.

          Touradji, in his individual capacity,
also agreed to serve as a manager of Playa GP, another Texas entity.  Playa GP’s sole purpose was to act as the
general partner of Playa LP and carry out its business, which included oil and
gas interests in Texas.  Additionally, the
articles of organization of Playa GP specifically invoke the provisions of the
Texas Business Corporations Act concerning indemnification of the
managers.  

          Touradji communicated with Beach, a
Texas resident, and with Beach Capital, another Texas entity, concerning the
ongoing business of Playa LP and Playa GP. 
Touradji consented to Playa LP’s sale of Texas oil and gas interests to
raise revenue, which was distributed to DeepRock and not to the other limited
partner, Beach Capital.  Touradji also
met with other managers of Playa GP to remove Beach as a manager and CEO of
Playa GP.  

                             (c)      Analysis  

          Touradji purposefully directed his
activities towards Texas.  First, the
actions stated above are Touradji’s actions, not the unilateral actions of some
third party.  See Retamco, 278 S.W.3d at 340 (finding nonresident defendant’s
contact with Texas not result of unilateral activity of third party when
defendant was “willing participant in a transaction with an affiliated Texas
company to purchase Texas property”); TexVa, Inc., 300 S.W.3d at 889 (nonresident defendants’ Texas contacts not
unilateral activity of third party where they formed partnership with Texas
resident, later incorporated partnership under Texas law, agreed to serve as
officers and directors of corporation, and traveled to Texas twice to discuss
business).  Second, Touradji’s
contacts cannot be characterized as random, isolated, or fortuitous.  See
Retamco, 278 S.W.3d at 340 (finding nonresident defendant’s contact with
Texas not “random, fortuitous, or attenuated” because defendant “reached out
and created a continuing relationship in Texas” by knowingly accepting transfer
of real property located in Texas); TexVa, Inc., 300 S.W.3d at 889 (finding nonresident defendants’ Texas contacts
purposeful and not “random, isolated, or fortuitous” where defendants agreed to
create ongoing business relationship with Texas residents, form Texas
corporation, act as officers and directors of Texas corporation, and twice
traveled to Texas to discuss ongoing business of corporation).  Third, Touradji sought benefits,
advantages, and profits through his purposeful availment of Texas.  See
Retamco, 278 S.W.3d at 340 (finding nonresident defendant sought “benefit,
advantage or profit” in Texas by accepting real property located in Texas
because defendant could enforce warranties and covenants related to real property,
received revenue from property, and sold portion of property); TexVa,
Inc., 300 S.W.3d at 889
(finding nonresident defendants’ acts in creating Texas corporation and ongoing
business relationship with Texas residents “clearly sought to profit” from
contact with Texas).  We hold Touradji’s
contacts were purposefully directed towards Texas.

          We
also note Touradji bears the burden of negating all bases of jurisdiction
alleged by the plaintiffs.  See Kelly, 301 S.W.3d at 659.  Here, in his affidavit, Touradji admitted
that he had approximately 10 phone calls to and from Texas discussing the
ongoing business of Playa LP.  Touradji
also visited Texas five times for Playa LP business.  Concerning the specific allegations of fraud
(that Touradji made representations to plaintiffs in Texas) and interference
with contract (that Touradji took control of Playa LP, obstructed its ongoing
operations, and denied plaintiffs their share of revenues), Touradji avers, “To
the extent that any of the aforementioned allegations occurred—and I deny any
and all allegations of wrongdoing—Plaintiffs have not, and cannot, allege that
any of the allegations with respect to me occurred in Texas.”  As discussed above, physical presence in
Texas is not the only basis for personal jurisdiction and plaintiffs’
allegations of fraud and interference with contract did sufficiently allege a
Texas connection.

                   3.       Substantial Connection

          In
this portion of his second issue, Touradji asserts that his contacts with Texas
are not substantially connected to the operative facts of the litigation.  In order to meet the final requirement for
specific jurisdiction—that the claims arise from or relate to the defendant’s
contacts with Texas—there must be a substantial connection between those
contacts and the operative facts of the litigation.  Moki Mac, 221 S.W.3d at 584–85.

          Touradji’s contacts with Texas all relate to the ongoing business of
Playa GP and Playa LP.  As discussed
above, these contacts include communicating to Texas residents concerning the
ongoing operations of Texas entities, consenting to the sale of Texas real
property, causing distributions to be made from a Texas entity, removing Beach
as a manager and officer of a Texas entity, and taking control of two Texas
entities.  The underlying litigation
concerns whether, during the course of these activities, Touradji made
fraudulent representations to Texas residents, breached fiduciary duties that
he owed to Texas residents, or interfered with the business relationships and
contracts of Texas residents.  This is a
sufficient basis to conclude the claims in this case are substantially related
to Touradji’s purposeful contacts with Texas. 
See TexVa, Inc., 300 S.W.3d at
890 (holding “no difficulty concluding” litigation concerning breach of
business agreements and breach of fiduciary duty arose from or was related to
defendants’ contacts that constituted ongoing business relationship with Texas).  In addition, part of the alleged wrongdoing
involves the sale of Texas real property and the disbursement of the proceeds
from that sale to DeepRock from the Texas entities.  See Retamco, 278 S.W.3d at 341 (suit
concerning allegedly fraudulent transfer of Texas real property from Texas
entity arises from or relates to Texas contacts even though transaction
occurred outside of Texas).  We hold the
underlying litigation arises from or relates to Touradji’s contacts with Texas.        

          Touradji
relies upon two recent court of appeals cases to support his contention that he
is not subject to specific jurisdiction. 
First, Touradji cites to Lamar v.
Poncon, No. 01-08-01036-CV, 2009 WL 3152181 (Tex. App.—Houston [1st Dist.]
Oct. 1, 2009, pet. filed).  In Lamar, the Lamars booked a vacation in
Nicaragua.  2009 WL 3152181 at *1.  While driving the Lamars from the airport to
the resort, the driver fell asleep, severely injuring the Lamars in the ensuing
accident.  Id.  The nonresident
defendant allegedly made representations to the Lamars that their travel from
the airport to the resort would be safe. 
Id. at *6.  This court held specific jurisdiction was not
present because there was no substantial connection between the representation
and the operative facts of the litigation because the litigation would focus on
whether the nonresident defendant and its driver were negligent in
Nicaragua.  Id.  Unlike Lamar, the operative facts of this
litigation revolve around the ongoing business operations of a Texas entity
with its principal place of business in Texas. 
Touradji’s contacts relate directly to the facts of the litigation, and
the focus of the litigation will not be on an accident or injury that occurred
outside of Texas.  Lamar is distinguishable and therefore not controlling in this
case.

          Touradji
also cites to Proctor v. Buell, 293
S.W.3d 924 (Tex. App.—Dallas 2009, no pet.). 
In Proctor, the plaintiffs,
Texas residents, alleged the defendants, including Proctor, fraudulently
induced plaintiffs to invest $120,000 to acquire Texas property, of which
plaintiffs would receive partial ownership. 
Proctor, 293 S.W.3d at
926.  Proctor filed a special appearance
that the trial court denied.  Id. at 927.  The court of appeals held the trial court
erred because Proctor was not subject to specific jurisdiction in Texas.  Id.
at 932.  Although Proctor contributed
money to acquire the Texas property and profited from the allegedly wrongful
sale of the property, the operative facts of the litigation would focus
primarily on the alleged misrepresentations made to plaintiffs and the
undisputed evidence showed that Proctor never communicated with plaintiffs in
any way.  Id.  The court therefore held
there was not a substantial connection between Proctor’s contacts and the
operative facts of the litigation.  Id. 
Here, plaintiffs have alleged that Touradji communicated with them
concerning the operations of a Texas entity. 
This lawsuit involves those allegedly fraudulent communications.  Further, it is undisputed that Touradji
communicated with plaintiffs, both over the phone and while physically present
in Texas.  Proctor is distinguishable on the facts of the case.

          We
sustain Touradji’s second issue concerning the claims for slander and libel and for intentional
infliction of emotional distress.  We
overrule Touradji’s second issue concerning the claims for fraud, breach of
fiduciary duty, and interference with contract and economic relations.

Conclusion

          We reverse the trial court’s denial of
Touradji’s special appearance concerning the claims for slander and libel and
for intentional infliction of emotional distress.  We also reverse the trial court’s denial of
Touradji’s special appearance concerning general jurisdiction.  We affirm the trial court’s order in all other
respects.  We remand this case to the
trial court for further proceedings.    

 

 

                                                                   Elsa
Alcala

                                                                   Justice


 

Panel consists
of Chief Justice Radack and Justices Alcala and Higley.

 











[1]           See
Tex.
Civ. Prac. & Rem. Code Ann.
§ 51.014(a)(7) (Vernon 2008) (authorizing interlocutory appeal of order denying
special appearance).





[2]
          U.S. Const. amend. XIV, § 1.





[3]           See Tex. Civ. Prac. & Rem. Code Ann. §
17.042 (Vernon 2008).





[4]           Due process also requires that the
exercise of personal jurisdiction over a nonresident
defendant “comport with fair play and substantial justice.”  Preussag
Aktiengesellschaft v. Coleman, 16 S.W.3d 110, 113 (Tex. App.—Houston [1st
Dist.] 2000, pet. dism’d w.o.j.). 
Touradji does not assert that the exercise of personal jurisdiction over
him would violate fair play and substantial justice.  We therefore do not address this issue.





[5]           Plaintiffs assert that Touradji’s
concession that specific jurisdiction exists with respect to certain claims,
discussed below, waives his special appearance with respect to all remaining
claims.  To support this assertion,
plaintiffs cite to this Court’s opinion in Glattly
v. CMS Viron Corp., 177 S.W.3d 438 (Tex. App.—Houston [1st Dist.] 2005, no
pet.).  In Glattly, we stated that the trial court properly denied Glattly’s
special appearance if personal jurisdiction existed with respect to any claim
asserted against him.  Glattly, 177 S.W.3d at 447.  We noted that Glattly had filed a special
appearance “to the entire proceeding” rather than making a special appearance
as to specific claims.  Id.; see
also Tex. R. Civ. P.
120a(1) (“A special appearance may be made as to an entire proceeding or as to
any severable claim involved therein.”). 
We also noted that Glattly’s personal jurisdiction briefing in the trial
court did not assert separate arguments for separate causes of action brought
against him or assert that any cause of action asserted against him was
severable.  Id.  Glattly is distinguishable. 
Here, Touradji filed a brief with the trial court specifically asserting
that different
causes of action must be examined separately for personal jurisdiction and citing
Seiferth v. Helicopteros Atuneros, Inc., 472 F.3d 266 (5th
Cir. 2006).  At the special appearance
hearing, Touradji also specifically argued that specific jurisdiction must be
established separately for each cause of action.





[6]           In his brief to this Court, Touradji
states he is not appealing the trial court’s denial of his special appearance
concerning the claim for interference with contract and economic relations, but
only to the extent “this cause of action arises from Touradji’s actions as a manager of Playa GP.”  (Emphasis in original).  Unlike the claim for breach of fiduciary
duty, discussed below, the allegations do not clearly limit this cause of
action as arising from Touradji’s role as a manager of Playa GP.  We therefore address this claim on the merits
of the jurisdictional issue.